[No. B122777. Second Dist., Div. One. Nov. 4, 1999.]

HERBERT HANSON, Plaintiff and Appellant, v.
MARSHALL GRODE et al., Defendants and Respondents.

COUNSEL

Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon for Plaintiff and Appellant.

Hemer, Barkus & Clark, Barbara M. Reardon and Jack Rosenbaum for Defendant and Respondent Marshall Grode.

Patterson, Ritner, Lockwood, Gartner & Jurich and Patrick J. Foley for Defendants and Respondents Robert Scott Pashman and West Coast Spine Institute.

OPINION

**MASTERSON, J.**—Plaintiff Herbert Hanson appeals from the summary judgment entered in favor of defendants Dr. Marshall Grode, Dr. Robert Scott Pashman, and West Coast Spine Institute.[1] We reverse.

### STANDARD OF REVIEW

Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

■ " 'A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one

---

[1]West Coast Spine Institute is a company owned by Pashman. Where applicable, references to Pashman include this entity.

or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. . . . In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. . . . In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed.' . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. . . . In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true." (*A-H Plating, Inc.* v. *American National Fire Ins. Co.* (1997) 57 Cal.App.4th 427, 433-434 [67 Cal.Rptr.2d 113], citations omitted.)

## BACKGROUND

In mid-1995, Hanson, then 33 years old, was referred to Dr. Grode for neurosurgical evaluation. Hanson had collapsed following a minor collision in a basketball game. Upon examining Hanson and reviewing his medical records, Grode diagnosed the problem as congenital spinal stenosis, which Grode explained as compression of the spinal canal. Grode recommended that Hanson undergo a posterior laminoplasty to relieve the compression.[2] Hanson was referred to Dr. Pashman, who concurred in the recommendation.

The surgery was performed by Drs. Pashman and Grode on August 11, 1995. Hanson, who had been told to expect a hospital stay of four days, was discharged nine days later. Four days after being discharged, he was readmitted to the hospital for an additional four days.

Hanson was examined in Pashman's office on September 12, 1995. In a letter to Dr. Grode discussing the examination, Pashman described Hanson's postoperative course as "somewhat rocky." Pashman elaborated that Hanson's symptoms included intermittent swelling of the neck, associated with pain. A postoperative MRI indicated a "collection . . . which was described

---

[2]Posterior laminoplasty was described as a less invasive, more conservative procedure with fewer complications than a laminectomy. Laminectomy is the "excision of the posterior arch of a vertebra . . . ." (The Sloane-Dorland Ann. Medical-Legal Dict. (1987) p. 403.)

as possibly blood or epidural hematoma." Pashman's September 12 examination revealed "significant increased kyphosis of the upper spine."[3] Pashman stated it was possible that Hanson might need "exploration" of the laminoplasty "and then he may need a formal anterior spinal fusion and vertebrectomy to relieve the anterior compression of his [spinal] cord, the posterior compression of his cord, and reverse the cervical kyphosis." Pashman further stated that he explained the situation to Hanson and told Hanson that "he had significant spinal stenosis, cord changes and that he definitely needed an operation to relieve this."

On October 24, 1996, Hanson sued Grode and Pashman for medical malpractice. Grode and Pashman filed separate motions for summary judgment. Each motion was supported by an expert declaration. After setting forth their credentials and listing the materials they had reviewed to provide the bases of their opinions, the experts opined that: the laminoplasty procedure performed on Hanson was appropriate for his condition. The procedure was performed in a manner within the applicable standard of care. Hanson's postoperative complications are known complications of the laminoplasty procedure and were not the result of any negligence of Grode or Pashman.

In opposition, Hanson's equally qualified expert, Dr. Arden Reynolds, opined that Grode and Pashman "acted below the applicable standard of care, in [their] care and medical treatment of Herbert Hanson based on, among other reasons, the following: [¶] a. Further investigation should have been performed as to the cause of bleeding at the time of the surgical procedure and, if necessary, explore the area with a laminectomy, as exposure to control bleeding was required.[4] [¶] b. The epidural hematoma and other medical conditions suffered by plaintiff should have been discovered by defendants prior to initial discharge from the hospital subsequent to the subject surgery. [¶] c. A large amount of Avitene in the site of the bleeding should not have remained. [¶] d. The dura leak should have been explored and sutured rather than just pack it. [¶] e. When the patient awoke in the recovery room with symptoms of nerve injury (which he did not have pre-operatively), he should have been taken back and explored as to why this was present. [¶] f. By August 27, 1995, it was apparent that the surgical procedure that was performed on August 11, 1995 had not only failed to

---

[3]Kyphosis is defined as "abnormally increased convexity in the curvature of the thoracic spine as viewed from the side; hunchback." (The Sloane-Dorland Ann. Medical-Legal Dict., *supra*, at p. 401.)

[4]At deposition, Pashman recounted that Hanson's dura had been punctured during the surgery. (Dura mater is "the outermost, toughest, and most fibrous of the three membranes (meninges) covering the brain and spinal cord . . . ." (The Sloane-Dorland Ann. Medical-Legal Dict., *supra*, at p. 232.) Pashman did not recall whether the dura had been punctured by Grode or by himself.

improve the severe congenital spinal stenosis, but indeed [it] had become worse."

Dr. Reynolds further declared it was his opinion that "the nerves were injured during the subject surgical procedure and most likely during the time the bleeding and dura leak occurred"; "the pre-operative, operative and post-operative care provided by defendants . . . to Mr. Hanson contributed to and was a substantial factor or cause in bringing about Mr. Hanson's current injuries"; and the "post-operative care and treatment rendered to Mr. Hanson by defendants . . . was below the standard of care for, among other reasons, failing to diagnose epidural hematoma prior to discharge from hospital after initial surgery."

At the hearing on the motion, the trial court found that the declarations of defendants' experts had established a prima facie case to shift the burden to Hanson, but that the Reynolds declaration in opposition to summary judgment lacked a factual basis. Accordingly, defendants motions were granted. Judgment in defendants' favor was filed on March 24, 1998. This appeal followed.

## Discussion

Hanson contends that Dr. Reynolds's declaration gave rise to triable issues of fact as to breach of duty and causation. We find merit in the contention.[5]

"[I]n any medical malpractice action, the plaintiff must establish: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 . . . .)" (*Gami* v. *Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 877 [22 Cal.Rptr.2d 819].)

" ' "The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it

---

[5]Hanson additionally contends that defendants failed to establish a prima facie case for lack of medical negligence because their expert declarations were not based on articulable facts and that triable issues of fact exist as to whether Hanson gave informed consent. Finding merit in Hanson's contention regarding breach of duty and causation, we need not discuss his other issues.

presents the basic issue in a malpractice action and can only be proved by their testimony [citations] . . . ." [Citations.]' [Citations.]" (*Flowers* v. *Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [35 Cal.Rptr.2d 685, 884 P.2d 142].) " 'California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.' [Citations.]" (*Munro* v. *Regents of University of California* (1989) 215 Cal.App.3d 977, 984-985 [263 Cal.Rptr. 878].) "[E]xpert opinions . . . are worth no more than the reasons and factual data upon which they are based." (*Griffith* v. *County of Los Angeles* (1968) 267 Cal.App.2d 837, 847 [73 Cal.Rptr. 773].)

■ We find Dr. Reynolds's declaration more than adequate to satisfy Hanson's burden on summary judgment. Relying on *Osborn* v. *Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234 [7 Cal.Rptr.2d 101], defendants disparage the portion of the declaration containing subparagraphs, quoted above, because of its frequent use of the word "should." To be sure, "professional prudence is defined by actual or accepted practice within a profession, rather than theories about what 'should' have been done." (*Id.* at p. 282; see also *Landeros* v. *Flood* (1976) 17 Cal.3d 399, 410 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324].) However, there is nothing theoretical about the Reynolds declaration in this regard; rather, specific factual breaches of duty are clearly asserted. For example, defendants failed to investigate bleeding at the time of the surgery, which investigation may have led them to perform a laminectomy. Once Hanson was in the recovery room, defendants failed to return him to surgery to determine why he had symptoms of nerve injury. Moreover, in a later portion of the declaration Reynolds states that defendants' failure to diagnose epidural hematoma prior to discharge from the hospital fell below the applicable standard of care. Accordingly, triable issues were raised by Hanson on the element of breach of duty.

Defendants fare no better on the element of causation. Reynolds states that Hanson suffered nerve damage during the surgery and that the care defendants provided was a cause of his injuries. Although the style of the Reynolds declaration is at times a bit obtuse, Hanson is entitled to all favorable inferences that may reasonably be derived from that declaration. These inferences include a reading of the declaration to state that the nerve damage Hanson suffered during surgery was caused by the conduct of defendants,

which conduct fell below the applicable standard of care. Nothing more was needed.[6]

## DISPOSITION

The judgment is reversed. Plaintiff Herbert Hanson is to recover costs on appeal.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

On November 29, 1999, the opinion was modified to read as printed above.

---

[6]The recent case of *Kelley* v. *Trunk* (1998) 66 Cal.App.4th 519 [78 Cal.Rptr.2d 122] suggests that even on summary judgment, an expert's declaration must set forth in excruciating detail the factual basis for the opinions stated therein. We find this approach, under which all of the expert declarations in this case would have to be deemed inadequate, to be unsupported. Accordingly, we decline to utilize it.