[No. B184043. Second Dist., Div. Three. June 1, 2006.]

MARIAN TORTORELLA, Plaintiff and Respondent, v.
DAN JOSHUA CASTRO, Defendant and Appellant.

**COUNSEL**

Maranga • Morgenstern, Kenneth A. Maranga, Reinhold Mueller; Greines, Martin, Stein & Richland, Martin Stein and Carolyn Oill for Defendant and Appellant.

Wasserman, Comden & Casselman and Kevin H. Park for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Defendant and appellant Dan Joshua Castro, M.D. (Dr. Castro), appeals an order granting a motion for new trial obtained by plaintiff and respondent Marian Tortorella (Tortorella) in her medical malpractice action against him.[1]

By way of background, Dr. Castro brought a motion for summary judgment, asserting the care he rendered to Tortorella was consistent with the standard of care, and that no negligent act or omission by him either caused, or was a substantial factor in causing, harm to Tortorella. In opposition thereto, Tortorella presented an expert declaration stating the preoperative evaluation by Dr. Castro fell below the accepted standard of care, and that the sinus surgery he performed on her was *unnecessary*.

The trial court granted summary judgment in favor of Dr. Castro on the ground Tortorella's opposing papers failed to raise a triable issue with respect to the causation element of a cause of action for medical malpractice.[2] Thereafter, the trial court granted Tortorella's motion for new trial based on "the equities" and the policy favoring "resolutions [on] the merits."

We conclude the trial court erred in granting summary judgment in favor of Dr. Castro. Tortorella's opposing expert declaration, asserting the surgery Dr. Castro performed on Tortorella was unnecessary, was sufficient to raise a triable issue of material fact as to causation. If surgery is performed unnecessarily, the mere fact the surgery was performed is sufficient to constitute harm to the patient. Because the grant of summary judgment was legally erroneous, the trial court properly granted Tortorella's subsequent motion for new trial, even though it did so on improper grounds.

Accordingly, the new trial order is affirmed.

---

[1] An order granting a new trial is appealable. (Code Civ. Proc., § 904.1, subd. (a)(4).)

All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2] " '[I]n any medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) *a proximate causal connection between the negligent conduct and the resulting injury*; and (4) actual loss or damage resulting from the professional's negligence." [Citation.]' [Citation.]" (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606 [90 Cal.Rptr.2d 396], italics added.)

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

On April 15, 2002, Tortorella, who had a history of left-sided facial pain and pressure, underwent an MRI of her sinuses ordered by a physician.

On April 24, 2002, Tortorella was examined by another physician. He found her symptoms were sinugenic and prescribed the antibiotic Cipro, the steroid nasal spray Nasacort, and the antihistamine Clarinex.

On April 26, 2002, Tortorella met with a dentist, who attributed her symptoms to sinus problems.

On May 6, 2002, Tortorella first presented to Dr. Castro with progressive, chronic and disabling rhinosinusitis bilaterally. He performed an endoscopic nasopharyngoscopy and determined Tortorella had a septal deviation bilaterally with 80 percent airway narrowing, a concha bullosa with thick mucous obstructing the middle ostium and a poorly draining middle turbinate and sphenoethmoid recess. Dr. Castro concluded Tortorella was an appropriate candidate for bilateral endoscopic sinus surgery and septoplasty and partial turbinectomy.

On May 23, 2002, Tortorella underwent bilateral endoscopic sinus surgery, septoplasty and partial turbinectomy performed by Dr. Castro at UCLA Medical Center, and was discharged the same day. At the initial follow-up visit on May 31, 2002, Dr. Castro performed a bilateral sinus debridement and suction of nasal debris. On June 5, 2002, Tortorella again saw Dr. Castro and underwent another endonasal sinus debridement. Tortorella did not return to Dr. Castro for further care, believing something was done wrong in the surgery.

2. *Proceedings.*

a. *Pleadings.*

On August 1, 2003, Tortorella filed a complaint for medical malpractice against Dr. Castro and the Regents of the University of California (Regents).[3] Tortorella alleged Dr. Castro was negligent in examining, diagnosing and

---

[3] The Regents obtained summary judgment on other grounds which are not relevant here. Tortorella has not challenged the summary judgment in favor of the Regents. Her motion for new trial was directed solely at the judgment in favor of Dr. Castro. The judgment in favor of the Regents is final and this appeal solely concerns the grant of a new trial with respect to Tortorella's cause of action against Dr. Castro.

treating her, causing permanent and serious injuries to her sinus and nasal system, as well as high blood pressure, head and facial pain.

### b. *Dr. Castro's motion for summary judgment.*

Dr. Castro moved for summary judgment, asserting (1) the care he rendered to Tortorella was consistent with the standard of care, and (2) to a reasonable medical probability, no negligent act or omission by him either caused, or was a substantial factor in causing, harm to Tortorella.

Dr. Castro's motion was supported by the expert declaration of Paul H. Toffel, M.D. According to Dr. Toffel, Dr. Castro complied with the standard of care in all respects: Tortorella was an appropriate candidate for the endoscopic sinus surgery performed by Dr. Castro based on her history of sinus complaints, as well as the results of the physical examination via endoscopy and the MRI scan; the preoperative workup was performed entirely within the standard of care; Dr. Castro duly informed Tortorella of the risks, benefits and alternatives to surgery and Tortorella appropriately consented to the surgery; and the May 23, 2002 surgery was performed entirely within the standard of care, as were the two subsequent sinus debridements.

With respect to the key issue of causation, the Toffel declaration stated: There was no reasonable medical probability that anything Dr. Castro did or failed to do in the care and treatment of Tortorella caused or was a substantial factor in any injury to her; persons with chronic sinusitis are born with the disease and have a hereditary tendency for sinuses to inflame; and to a reasonable medical probability, Tortorella's alleged symptoms of left-sided facial pain were not due to any care rendered by Dr. Castro.

### c. *Tortorella's opposition.*

In opposition, Tortorella argued, "summary judgment must be denied because triable issues of material fact exist in regard to the care and treatment of the plaintiff where she underwent unnecessary endoscopic surgery."

Tortorella's opposition papers were supported by the declaration of Ellis C. Berkowitz, M.D., a board-certified specialist in the field of otolaryngology. Dr. Berkowitz stated: "Based on a careful review of the medical records . . . and the MRI and CT scans of the sinuses, *I am able to conclude with a high degree of medical probability that the pre-operative evaluation and the*

*endoscopic sinus surgery performed by Dr. Castro on [May 23, 2002] fell below the accepted standard of care in the field of otolaryngology."* (Italics added.) Specifically, Dr. Castro misread the MRI scan; this misreading of the MRI scan led him to schedule Tortorella for surgery; Dr. Castro scheduled Tortorella for surgery 15 days after his initial evaluation; he did not try medical therapy before surgery; the MRI scan did not reveal pathology in the sphenoid sinus, yet Dr. Castro removed tissue there. Further, "[t]here were no diagnostic considerations by Dr. Castro of nasal and sinus allergy, underlying dental pathology or even some type of neuralgia. Without any clear understanding of the patient or her problem, he chose to perform major endoscopic sinus surgery just two weeks after his initial evaluation. The cultures at surgery revealed an anaerobic bacteria was found in the sinuses, but there is no indication in the medical record that Dr. Castro advised any medical treatment for this condition. As noted, *these specific failures fall below the standard of care and on this record are an indication that the surgery was unnecessary."* (Italics added.)

> d. *Trial court's ruling granting summary judgment in favor of Dr. Castro.*

On March 8, 2005, the matter came on for hearing and was taken under submission.

On March 22, 2005, the trial court granted summary judgment in favor of Dr. Castro, ruling, "[Tortorella] has failed to raise a triable issue of fact on the issue of causation, which her expert's declaration fails to address. The Court has reviewed the additional cases cited by counsel orally (*Hanson v. Grode*[, *supra*, 76 Cal.App.4th 601 [90 Cal.Rptr.2d 396]] and *Mann v. Cracchiolo* [(1985) 38 Cal.3d 18 [210 Cal.Rptr. 762, 694 P.2d 1134]]), and finds that neither case supports any different conclusion by the court. Accordingly, [Dr. Castro is] entitled to judgment as a matter of law."

> e. *Motion for reconsideration.*

On March 30, 2005, Tortorella filed a motion for reconsideration, arguing "causation is axiomatic where the surgery was unnecessary." However, assuming the trial court was unable to draw this conclusion from the opposing declaration of Dr. Berkowitz, Tortorella submitted a supplemental declaration by Dr. Berkowitz, explaining the unnecessary surgery did in fact cause a direct injury to her.

Dr. Castro opposed the motion, asserting Tortorella had failed to present any newly discovered facts or circumstances.

On April 20, 2005, before the hearing on the motion for reconsideration, the trial court entered judgment on the summary judgment in favor of Dr. Castro.

On May 12, 2005, the trial court denied the motion for reconsideration, ruling the entry of judgment deprived the trial court of its jurisdiction to reconsider its order granting summary judgment.

f. *Motion for new trial.*

On April 29, 2005, nine days after entry of judgment, Tortorella filed a notice of intention to move for new trial on various grounds, including "[i]nsufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law" (§ 657, subd. (6)) and "[e]rror in law, occurring at the trial and excepted to by the party making the application." (§ 657, subd. (7).)

In the motion for new trial, Tortorella reiterated "that causation is axiomatic where the surgery was unnecessary." Tortorella "assert[ed] that where there been testimony establishing a breach of care with a high degree of medical probability, and the resulting surgery was unnecessary, the magic word 'causation' may be inferred from the fact that an endoscopic surgery procedure removing human tissue is an injury." However, in the event the trial court could not draw this conclusion from the declaration of Dr. Berkowitz filed in opposition to summary judgment, Tortorella resubmitted the supplemental declaration of Dr. Berkowitz from the motion for reconsideration, explaining the unnecessary surgery did in fact cause injury to her.

The supplemental expert declaration elaborated: "Surgery on the sinuses changes the normal sinus anatomy, and may result in further sinus infections, even worse than the patient had before the procedure. In this case, the surgery changed the patient's normal sinus anatomy and function. [¶] . . . The unnecessary sinus surgery also put the patient under significant risk of anesthetic injury, bleeding and postoperative infection. These were risks directly caused by the unnecessary surgery. A trial on medical treatment was clearly indicated before taking the patient to surgery and subjecting her to these various risks without indication."

In opposing the motion for new trial, Dr. Castro argued Tortorella failed to establish entitlement to a new trial, she failed to show the existence of any newly discovered evidence, and she failed to demonstrate the evidence now being presented could not have been produced earlier had she been diligent.

On May 25, 2005, the trial court heard and granted the motion for new trial. It granted the motion "based on the equities of the circumstances. The summary judgment motion was granted based on the failure of plaintiff to provide any expert testimony supporting causation. The motion to reconsider was denied for jurisdictional reasons and not [on] the merits. With legal precedence preferring resolutions [on] the merits rather than through technical errors, the Court rules that the trial go forward, with the supplemental declaration providing the missing support and the element of causation."

Dr. Castro filed a timely notice of appeal from the order granting a new trial.

## CONTENTIONS

Dr. Castro contends: The order granting a new trial must be reversed because there was no statutory basis for granting a new trial; the trial court improperly granted a new trial on "the equities" and on a policy favoring disposition on the merits; the order for new trial could not have been based on newly discovered evidence because Tortorella failed to demonstrate the new evidence could not have been discovered earlier through the exercise of reasonable diligence; and the new trial order cannot be upheld on any alternative ground.

## DISCUSSION

1. *Propriety of motion for new trial following grant of motion for summary judgment.*

A threshold issue is whether a motion for new trial may be brought following the grant of a motion for summary judgment.

The early decision of *Gray v. Cotton* (1917) 174 Cal. 256, 258 [162 P. 1019] states, "proceedings for new trial do not lie to secure the re-examination of the decision of a motion." (*Id.* at p. 258.)

However, the law since has evolved (see, e.g., *Carney v. Simmonds* (1957) 49 Cal.2d 84, 87–91 [315 P.2d 305] [holding a motion for a new trial is appropriate following an order granting judgment on the pleadings]) and it now is settled that a "motion for a new trial is appropriate following an order granting summary judgment[,] . . . even though, strictly speaking, 'summary judgment . . . is a determination that there shall be no trial at all.' [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 858 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

Therefore, Tortorella was entitled to bring a motion for new trial following the grant of summary judgment in favor of Dr. Castro.

> 2. *Trial court's rationale for granting a new trial is immaterial; the new trial order will be upheld if correct on any ground.*

Section 657 prescribes seven grounds upon which a new trial may be granted.[4] Here, the trial court granted a new trial "based on the equities of the circumstances" as well as "legal precedence preferring resolutions [on] the merits rather than through technical errors." The trial court's ruling does not fit within the statutory framework.

Nonetheless, the trial court's rationale does not bind us. With certain exceptions not relevant here, section 657 provides in relevant part: "On appeal from an order granting a new trial the order shall be affirmed *if it should have been granted upon any ground stated in the motion,* whether or not specified in the order or specification of reasons . . . ." (Italics added.)[5]

---

[4] Section 657 enumerates the following seven grounds for granting a new trial: "1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial. [¶] 2. Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors. [¶] 3. Accident or surprise, which ordinary prudence could not have guarded against. [¶] 4. Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial. [¶] 5. Excessive or inadequate damages. [¶] 6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law. [¶] 7. Error in law, occurring at the trial and excepted to by the party making the application."

[5] The full text of the cited portion of section 657 states: "On appeal from an order granting a new trial the order shall be affirmed *if it should have been granted upon any ground stated in the motion,* whether or not specified in the order or specification of reasons, *except that* (a) the order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively

Therefore, the order granting a new trial will be upheld if it should have been granted upon any ground raised in Tortorella's motion.

We now examine whether the new trial motion should have been granted upon a ground raised by Tortorella.

    3.   *Tortorella's motion for new trial established the decision granting summary judgment constituted an "error in law"; therefore, the grant of the motion for new trial was correct in result and will be affirmed.*

        a.   *Standard of appellate review.*

"[A]n appellate court will rarely disturb an order granting a new trial and then, only on a clear showing of abuse of discretion. [Citation.] However, where the ground under consideration is that the original judgment order is 'against the law,' the area of judicial action generally is not one involving discretion. The initial choice of the trial court challenged by a motion on this ground was either right or wrong, and this is the nature of the evaluation which must be made in passing upon [said] motion . . . ." (*In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 728 [146 Cal.Rptr. 675].)

        b.   *Trial court erred in granting Dr. Castro's motion for summary judgment because Tortorella's opposition papers were not silent on the issue of causation; Dr. Berkowitz's opposing declaration, to the effect that Dr. Castro performed unnecessary surgery on Tortorella, was sufficient to raise a triable issue as to causation; the erroneous grant of summary judgment was cured by the order granting new trial.*

To reiterate, the expert declaration of Dr. Berkowitz filed in opposition to summary judgment stated: "Based on a careful review of the medical records . . . and the MRI and CT scans of the sinuses, *I am able to conclude with a high degree of medical probability that the pre-operative evaluation and the endoscopic sinus surgery performed by Dr. Castro on [May 23, 2002] fell below the accepted standard of care in the field of otolaryngology.*" (Italics added.) Specifically, Dr. Castro misread the MRI scan; this misreading of the MRI scan led him to schedule Tortorella for surgery; Dr. Castro scheduled Tortorella for surgery 15 days after his initial evaluation; he did not

---

presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons." (Italics added.)

try medical therapy before surgery; the MRI scan did not reveal pathology in the sphenoid sinus, yet Dr. Castro removed tissue there. Further, "[t]here were no diagnostic considerations by Dr. Castro of nasal and sinus allergy, underlying dental pathology or even some type of neuralgia. Without any clear understanding of the patient or her problem, he chose to perform major endoscopic sinus surgery just two weeks after his initial evaluation. The cultures at surgery revealed an anaerobic bacteria was found in the sinuses, but there is no indication in the medical record that Dr. Castro advised any medical treatment for this condition. As noted, these specific failures fall below the standard of care *and on this record are an indication that the surgery was unnecessary.*" (Italics added.)[6]

Although the trial court read this declaration as being silent with respect to the issue of causation, it seems self-evident that unnecessary surgery is injurious and causes harm to a patient. Even if a surgery is executed flawlessly, if the surgery were unnecessary, the surgery in and of itself constitutes harm. Surprisingly, despite the volume of medical malpractice litigation, there is a dearth of case law in California on this point. However, *Emerson v. Bentwood* (2001) 146 N.H. 251 [769 A.2d 403], is instructive.

There, a plaintiff, who underwent a hysterectomy after suffering from intermittent pelvic pain for 17 years, brought a medical malpractice action against the surgeon, alleging the hysterectomy was unnecessary. (*Emerson, supra*, 769 A.2d at p. 405.) The plaintiff's expert, Dr. Klapholz, testified the defendant deviated from the standard of care in performing the hysterectomy and that far less invasive and risky ways existed to make a diagnosis than the removal of the plaintiff's organs. (*Ibid.*)

At the close of the plaintiff's case, the trial court granted the defendant's motion for a directed verdict, ruling, inter alia, even assuming there were a

---

[6] Dr. Castro also contends that in opposing summary judgment, Tortorella failed to produce competent evidence as to causation because the initial Berkowitz declaration failed to establish to a reasonable degree of medical probability that the surgery was unnecessary. Dr. Castro focuses on the final sentence of the declaration, wherein Dr. Berkowitz stated certain conduct by Dr. Castro was " '*an indication*' that the surgery was unnecessary." (Italics added.) We reject Dr. Castro's contention that Tortorella failed to produce competent evidence of causation. As set forth above, earlier in the declaration Dr. Berkowitz stated: "Based on a careful review of the medical records . . . and the MRI and CT scans of the sinuses, I am able to conclude *with a high degree of medical probability* that the pre-operative evaluation and the endoscopic sinus surgery performed by Dr. Castro on [May 23, 2002] fell below the accepted standard of care in the field of otolaryngology." (Italics added.) Taking the Berkowitz declaration as a whole and construing the declaration liberally in favor of Tortorella, as the party opposing summary judgment (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143 [29 Cal.Rptr.3d 144]), we conclude Dr. Berkowitz's initial declaration sufficiently opined it was medically *probable* the surgery was unnecessary.

deviation from the standard of care, Dr. Klapholz's testimony failed to establish causation. (*Emerson, supra*, 769 A.2d at pp. 405–406.)

The New Hampshire Supreme Court reversed the directed verdict and remanded the case for a new trial. (*Emerson, supra*, 769 A.2d at p. 409.) With respect to the question of causation, the high court cited Dr. Klapholz's testimony "that the defendant incorrectly diagnosed the plaintiff's condition as pelvic inflammatory disease. Further, Dr. Klapholz testified that had the defendant employed alternative diagnostic procedures, such procedures would have ruled out pelvic inflammatory disease. Moreover, he saw no evidence that a hysterectomy was required for the treatment of what was in the plaintiff's record at the time and that he considered a hysterectomy premature." (*Id.* at p. 407.)

*Emerson* stated: "*Whether the hysterectomy was necessary was an issue for the jury to resolve.* Dr. Klapholz's testimony goes to the weight of the evidence, a matter strictly within the province of the jury to determine." (*Emerson, supra*, 769 A.2d at p. 408, italics added.)

*Emerson* agreed with the plaintiff that she met her burden of proof by presenting reliable expert testimony which clearly established the causal link between the defendant's negligence and the plaintiff's wrongful hysterectomy. (*Emerson, supra*, 769 A.2d at p. 408.) "The burden is on the plaintiff to prove that she 'suffered injuries which would not otherwise have occurred' as a proximate result of the defendant's negligence. [Citation.] The plaintiff must establish the proximate cause between the negligence and injury by expert testimony. [Citation.] The quantum of evidence required to survive a directed verdict is only 'enough to warrant the conclusion . . . that the causal link probably existed.' [Citation.]" (*Ibid.*)

"Dr. Klapholz repeatedly contended . . . the defendant's conduct deviated from the standard of care when the defendant performed a hysterectomy given the plaintiff's symptoms. The plaintiff's alleged injury was the loss of her reproductive organs as a result of a wrongful hysterectomy. In other words, the expert testified that the plaintiff 'suffered injuries which would not otherwise have occurred.' [Citation.] *No recitation of 'specific words or phrases mirroring statutory language' is necessary to establish causation.* [Citation.]" (*Emerson, supra*, 769 A.2d at p. 408, italics added.)

"The plaintiff offered sufficient expert testimony to show a causal link between the defendant's alleged negligence and the plaintiff's alleged injury. [Citation.] *To conclude otherwise could conceivably render a plaintiff remediless whenever a physician acted prematurely and without a definitive diagnosis.*" (*Emerson, supra*, 769 A.2d at p. 408, italics added.) *Emerson* concluded:

"The expert's testimony was sufficient for a rational trier of fact to conclude that the defendant should have employed less invasive measures before resorting to a hysterectomy and that said deviation from the standard of care resulted in the plaintiff's injury." (*Id.* at p. 409.)

We recognize that in *Emerson*, the allegedly unnecessary surgery resulted in the loss of the patient's reproductive organs. However, any unnecessary surgery is inherently injurious in that the patient needlessly has gone under the knife and has been subjected to pain and suffering.

Therefore, at the summary judgment stage, if the opposing papers raise a triable issue as to whether a physician deviated from the standard of care by unnecessarily performing surgery, that is sufficient also to raise triable issues with respect to the two remaining elements of a cause of action for medical malpractice, namely, " ' "(3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." ' " (*Hanson v. Grode, supra,* 76 Cal.App.4th at p. 606.)

Thus, Dr. Berkowitz's expert declaration to the effect that the May 23, 2002 surgery was premature and unnecessary, was sufficient to raise a triable issue of material fact not only as to whether the performing of said surgery was a deviation from the standard of care, but also as to the presence of a causal connection between the negligent conduct and injury to the patient.[7]

Therefore, the trial court erred in granting summary judgment in the first instance, but the error was cured by the order granting a new trial.

## CONCLUSION

The trial court erred in granting Dr. Castro's motion for summary judgment because Tortorella's opposition papers were not silent on the issue of causation. Dr. Berkowitz's opposing declaration, to the effect that Dr. Castro performed unnecessary surgery on Tortorella, was sufficient to put in issue the element of causation. Given Dr. Berkowitz's opposing declaration, the trial court should have denied Dr. Castro's motion for summary judgment. Said error was remedied by the trial court by its grant of the motion for new trial, even though it granted the motion on improper grounds.

---

[7] The issue of whether Dr. Castro duly obtained Tortorella's informed consent to the sinus surgery is not before us and we do not address it.

## DISPOSITION

The order granting a new trial is affirmed. Tortorella shall recover costs on appeal.

Croskey, J., and Aldrich, J., concurred.