Filed 5/23/24  McKenzie v. Liu CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RUSSELL McKENZIE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JOHN LIU et al.,<br><br>    Defendants and<br>    Respondents. | B317858<br><br>(Los Angeles County<br> Super. Ct. No. BC691479) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Reversed and remanded.

Ivie McNeill Wyatt Purcell & Diggs, Byron Michael Purcell, and Julio C. Navarro, for Plaintiff and Appellant.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz, and Su, Avi Burkwitz, and Gil Burkwitz, for Defendants and Respondents.

This case involves a needle lost in a patient's body during one surgery and the second surgery performed to retrieve it. In October 2016, plaintiff Russell McKenzie (McKenzie) underwent surgery to remove a cancerous tumor from his cervical spine. The surgery was performed by John Liu, M.D. (Liu) and Patrick C. Hsieh, M.D. (Hsieh) at the University of Southern California's (USC) hospital. During the procedure, Liu and Hsieh became aware a 6-0 Prolene needle had been lost. The surgery was completed with the needle still inside McKenzie. Two days later, a second surgery was done solely to remove the needle. McKenzie sued defendants Liu, Hsieh, and USC (collectively, defendants) for professional negligence. Defendants filed a motion for summary judgment, which the trial court granted. The court found that although McKenzie raised a triable issue of material fact as to whether defendants breached the standard of care, McKenzie did not show defendants' breach caused him any harm. McKenzie appealed, arguing his expert declaration showed he was harmed by having to undergo the second surgery to remove the needle. We find McKenzie's expert declaration was sufficient to raise a triable issue of material fact as to causation. We reverse the judgment and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**
**A.     McKenzie's Surgeries and Medical Malpractice Action**

In February 2016, McKenzie suffered a stroke and subsequently experienced hand and foot numbness. The imaging studies showed McKenzie had stenosis in the right vertebral artery and a large tumor in the cervical region. In August 2016, McKenzie met with Liu, a neurosurgeon at USC. Liu's

2

impression was McKenzie's pain and symptoms could be relieved by surgical decompression in conjunction with a tumor resection.

On October 31, 2016, McKenzie underwent the tumor resection, which was performed by Liu and Hsieh. There were no medical complications during the surgery. However, a 6-0 Prolene needle used to stich the surgical site closed disappeared. The surgical bed was inspected and when the needle was not found, a magnet was used to search the operating room floor. The needle was not located, so an x-ray was taken of the surgical site, but radiology did not identify a retained object. Liu and Hsieh felt comfortable the needle was not within the surgical site and proceeded to complete the operation. McKenzie was transferred to the post-anesthesia recovery unit in stable condition.

The next day, McKenzie underwent an MRI, which revealed a "metal artifact" (i.e., the missing needle) near the C5 vertebral body. Liu and Hsieh then met with McKenzie to discuss removing the needle. Liu and Hsieh did not believe the needle posed a danger to McKenzie but recognized leaving the needle inside McKenzie would make it difficult to image him effectively. Liu and Hsieh felt the best option was to remove the needle so that future MRIs could be used to follow his tumor. McKenzie agreed to proceed with its removal.

Two days after the first surgery, Liu performed a second surgery to remove the retained needle. The needle was successfully removed without complication.

In January 2018, McKenzie filed this action against defendants. Following the sustaining of defendants' demurrer to a medical battery claim, McKenzie's operative first amended complaint asserted a single cause of action for professional

negligence against defendants. McKenzie alleged defendants negligently failed to account for and remove a needle from his body during the tumor resection. He asserted defendants' negligence required him to undergo a second surgery to remove the needle. McKenzie alleged he suffered mental anguish, pain and suffering, and added medical expenses, among other damages, as a result.

## B.    Summary Judgment Proceedings

### 1.    *Defendants' Motion for Summary Judgment*

In April 2020, defendants moved for summary judgment. Defendants argued (1) the care and treatment provided to McKenzie was at all times within the applicable standard of care, and (2) to a reasonable degree of medical probability, no negligent act or omission by defendants caused or contributed to McKenzie's claimed damages. The motion was supported by a declaration from Dean Chou, M.D. (Dr. Chou), a neurosurgeon.

It was Dr. Chou's opinion that Liu and Hsieh complied with the applicable standard of care during the first surgery to remove the tumor as there were no complications or issues with the surgical procedure itself. Dr. Chou opined that although an MRI later showed there was a needle left in McKenzie's body, and Liu and Hsieh were aware a needle was unaccounted for, there was no risk of injury or harm because of the retained needle. He opined that all reasonable steps that could be taken to locate the needle prior to closing the surgical wound were taken.

Regarding the second surgery to remove the needle, Dr. Chou opined the surgery was "uneventful, and the needle was successfully removed." With respect to causation, Dr. Chou said there was no evidence that the retained needle, or its subsequent

4

removal, caused McKenzie any harm. In addition, Dr. Chou stated that because there was no alleged wrongdoing by any provider other than Liu and Hsieh, USC by extension also met the standard of care and did not cause any of McKenzie's alleged injuries.

### 2. *Hearing Date Continuances*

Defendants' motion for summary judgment was originally set for hearing for September 2020. In August 2020, McKenzie filed an ex parte application to continue the hearing, claiming a continuance was necessary to depose Liu and Hsieh. McKenzie's counsel filed a declaration indicating that after it became apparent McKenzie could not depose Liu and Hsieh in-person because of the Covid-19 pandemic, McKenzie noticed Liu's and Hsieh's depositions for August 2020. Defendants objected to the notices and would not appear for the depositions. McKenzie anticipated Liu and Hsieh would testify as to what occurred when the needle was lost and planned to use their testimony to oppose the motion for summary judgment. Defendants opposed McKenzie's ex parte application, arguing the request should be denied because McKenzie was not diligent in seeking to depose Liu and Hsieh. The trial court granted the ex parte application and continued the hearing for the motion to November 2020. The court later continued the hearing to May 2021 based on the parties' stipulation.

In April 2021, McKenzie filed an opposition to defendants' motion for summary judgment. McKenzie requested the hearing be continued because he had been unable to depose Liu and Hsieh despite attempts to do so. McKenzie asserted his expert needed Liu's and Hsieh's testimony to properly assess and opine

5

on liability and damages. Shortly after, McKenzie filed an ex parte application seeking to continue the hearing on the same basis. Defendants opposed the ex parte, arguing McKenzie did not establish good cause warranting ex parte relief and did not act diligently. The trial court granted the ex parte application and continued the hearing date to September 2021. Additionally, the court ordered the parties to meet and confer and complete the depositions within 60 days. McKenzie deposed Liu and Hsieh in June 2021.

Thereafter, in August 2021, McKenzie filed another ex parte application to continue the hearing. McKenzie asserted a continuance was necessary because his expert, John G. Frazee, M.D. (Dr. Frazee), was experiencing Covid-19 symptoms and was unable to complete his declaration by the deadline for filing an opposition to the motion for summary judgment. Defendants opposed the ex parte application again arguing McKenzie had been dilatory in completing discovery. The trial court granted the ex parte application and continued the hearing to November 2021.

3. *McKenzie's Opposition*

In opposition to the summary judgment motion, McKenzie argued there were triable issues of fact concerning the standard of care and causation. McKenzie's opposition was supported by the declaration of Dr. Frazee, a physician and surgeon with experience in the field of neurosurgery from at least 1977 to 2019.

Dr. Frazee opined: "Drs. Hsieh and Liu fell below the standard of care by failing to find a lost needle, knowing that the sponge and needle count was incorrect. They also knew that a needle artifact could make the diagnosis of [a] recurrent tumor

6

difficult or even impossible as stated in the second operative report by Dr. Liu.  Proceeding with an emergent MRI to localize the needle would have been appropriate, while the patient was still under anesthesia.  This would have avoided the risks of a second surgery and anesthesia, and would have shortened the hospital stay."  Dr. Frazee stated, "The failure to find the retained needle at the first surgery, let [*sic*] to additional risks and financial costs of a second anesthesia and surgery."  He noted the second surgery was "successful in removing the retained needle without further complications."

### 4.    *Defendants' Reply*

In reply, defendants filed evidentiary objections to Dr. Frazee's declaration, including an objection on the ground he was not qualified to testify regarding the standard of care for neurosurgeons.  Defendants further asserted Dr. Frazee's declaration failed to demonstrate that any alleged failure by defendants to comply with the standard of care was the proximate cause of any of McKenzie's alleged injuries.

### 5.    *Trial Court's Ruling*

The trial court overruled defendants' objections to Dr. Frazee's declaration.  After finding defendants met their moving burden on summary judgment, the court determined McKenzie, through Dr. Frazee's declaration, raised a triable issue of fact as to whether defendants breached the standard of care.  However, the court found McKenzie did not meet his burden of production as to the issue of causation.

Although Dr. Frazee opined the failure to find the retained needle led to additional risks and financial costs of a second

7

anesthesia and surgery, the trial court noted Dr. Frazee recognized the second surgery was successful without any residual effects.  Thus, the court found Dr. Frazee failed to link the retention of the needle to any harm from the second surgery or otherwise.  Defendants' motion for summary judgment was granted.

McKenzie timely appealed.

## DISCUSSION

### A.    The Trial Court Did Not Abuse its Discretion by Continuing the Hearing for the Motion for Summary Judgment

We first address defendants' assertion that the trial court abused its discretion by continuing the initial hearing date for the motion for summary judgment.  Defendants argue there was not good cause for the continuances and the motion should have been granted as unopposed.  McKenzie argues defendants are attempting to use their respondents' brief to improperly appeal the court's orders continuing the hearing.  We conclude defendants' challenge to the continuance orders is properly before us, and the court did not abuse its discretion.

"'As a general rule, respondents who fail to file a cross-appeal cannot claim error in connection with the opposing party's appeal.  [Citation.]  A limited exception to this rule is provided by [Code of Civil Procedure] section 906.'" (*Khorsand v. Liberty Mutual Fire Ins. Co.* (2018) 20 Cal.App.5th 1028, 1034.)  Code of Civil Procedure section 906 states in pertinent part: "The respondent . . . may, without appealing from [the] judgment, request the reviewing court" review "any intermediate ruling, proceeding, order or decision which involves the merits or

8

necessarily affects the judgment or order appealed from or which substantially affects the rights of a party." The court may review such rulings or orders "for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which [the appellant] relies for reversal or modification of the judgment from which the appeal is taken." (*Ibid.*) Thus, respondents need not cross-appeal to assert that alternative grounds for affirmance exist or to establish lack of prejudice from an alleged error. (*California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7; see also *Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 487 [intermediate ruling necessarily affecting a final judgment is properly within scope of appellate review of the judgment without the need for cross-appeal].)

Because the trial court's ruling on the motion for summary judgment turned on its determination that McKenzie's expert declaration failed to raise a triable issue of material fact, we would necessarily affirm the judgment if we concluded the court erred in continuing the hearing to allow McKenzie additional time to file the expert declaration with his opposition. Because defendants are seeking to advance an alternative ground in support of the judgment, they are entitled to do so without filing a cross-appeal. Furthermore, respondents who have ultimately prevailed in the trial court are generally not "aggrieved" by the judgment in their favor, and therefore have no basis to separately appeal that judgment. (See Code Civ. Proc., § 902 ["Any party aggrieved may appeal in the cases prescribed in this title"]; *Mao's Kitchen, Inc. v. Mundy* (2012) 209 Cal.App.4th 132, 137 [ordinarily if a judgment is in favor of a party, he or she is not aggrieved and cannot appeal].) As to McKenzie's assertion that

defendants forfeited this issue by failing to raise it in the trial court, defendants opposed McKenzie's ex parte applications for a continuance on the same grounds they advance here.

Regarding continuing motions for summary judgment, Code of Civil Procedure section 437c, subdivision (h), provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." "The decision to grant or deny a continuance request under section 437c, subdivision (h), is vested in the trial court's discretion [citation], and the court's ruling is reviewed for an abuse of discretion." (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152.) "Given the high stakes involved in motions for summary judgment and summary adjudication, continuances under section 437c, subdivision (h), are 'virtually mandated "'upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion.'"'" (*Ibid.*)

Defendants specifically argue the court abused its discretion by granting the continuance in August 2020, when McKenzie's opposition was first due.[1] They contend McKenzie's

---

[1] Defendants more generally assert that the "1.5-year continuance of the hearing on the MSJ" was inappropriate. However, they do not

10

counsel's declaration filed with the ex parte application was insufficient to justify a continuance. McKenzie's counsel stated in his declaration that the summary judgment motion was filed in April 2020. Counsel intended to depose Liu and Hsieh in person, but when it became clear the COVID-19 pandemic would prevent that, counsel noticed their depositions for August 2020. Because the doctors refused to appear on the noticed dates, counsel said additional time was required for the depositions. He anticipated they would provide testimony regarding their conduct when the needle disappeared. Counsel's declaration, thus, identified facts essential to opposing defendants' motion for summary judgment and stated the reasons they could not be presented. While it is true McKenzie might have deposed the doctors earlier in the case, and multiple ex parte requests to continue hearings are not encouraged, it is also true the COVID-19 pandemic created challenges to taking depositions during the pendency of the motion.

Defendants suggest the continuances were unnecessary because the depositions were not needed to oppose their motion for summary judgment. However, this case revolves around the actions or inaction of the doctors. Indeed, McKenzie submitted excerpts from Liu's and Hsieh's depositions with his opposition.

sufficiently explain or support this argument. The hearing was originally scheduled to occur in September 2020 and was continued to November 2021, a period of 14 months. Of the 14 months, the parties stipulated to continue the hearing for six months. Defendants make passing critical references to other continuances in their Statement of Facts, but do not specifically discuss them in arguing the overall continuance of the hearing was an abuse of discretion. Further, the record does not disclose the available dates on the calendars of the trial court and counsel to which the hearing on the motion for summary judgment could have been moved.

11

The trial court properly exercised its discretion in granting McKenzie's August 2020 continuance.

**B.     McKenzie Raised Triable Issues of Material Fact**

McKenzie argues the trial court erred in granting the summary judgment motion on the basis that the retained needle did not cause him any harm.  He argues his expert's declaration established that if defendants had not failed to find the needle during the first surgery, he would not have had to undergo the second surgery to remove it.  Defendants, however, contend the trial court correctly concluded McKenzie failed to raise a triable issue of fact as to causation.  Defendants contend the declaration of McKenzie's expert should have been excluded as it was speculative and lacked foundation.  We find McKenzie's expert declaration was properly considered and sufficient to raise triable issues of material fact to preclude summary judgment of his professional negligence claim.

1.     *Summary Judgment Standard of Review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense.  (Code Civ. Proc., § 437c, subd. (p)(2).)  If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact.  (*Ibid.*)  A triable issue of material fact exists if the evidence would allow a reasonable juror to find

the underlying fact in favor of the party opposing summary judgment.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  "We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent."  (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.)

      2.    *Expert Testimony in Medical Malpractice Cases*

In any professional negligence (i.e., medical malpractice) action, "'the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."'"  (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606.)  "'"'The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations]. . . .' [Citations.]" [Citations.]'"  (*Id.* at pp. 606–607.)  "When a defendant health care practitioner moves for summary judgment and supports his motion with an expert declaration that his conduct met the community standard of care, the defendant is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence."  (*Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 310.)

"With respect to the element of proximate cause, '[i]n a medical malpractice action, the evidence must be sufficient to

13

allow the jury to infer that in the absence of the defendant's negligence, there was a reasonable medical probability the plaintiff would have obtained a better result.'" (*Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1166 (*Jameson*).) "Generally speaking, "'The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. [Citations.] That there is a distinction between a reasonable medical 'probability' and a medical 'possibility' needs little discussion. There can be many possible 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury.""" (*Ibid.*)

3. *The Trial Court Did Not Err by Considering Dr. Frazee's Declaration*

Defendants argue McKenzie's expert, Dr. Frazee, did not demonstrate he was qualified to testify about the standard of care for neurosurgeons so his declaration should have been disregarded. The trial court overruled defendants' objection made on this basis. We find no error.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) "We are required to uphold the trial judge's ruling on the question of an

14

expert's qualifications absent an abuse of discretion. [Citation.] Such abuse of discretion will be found only where "'the evidence shows that a witness *clearly lacks* qualification as an expert.'"" (*People v. Chavez* (1985) 39 Cal.3d 823, 828.)

When he executed his declaration, Dr. Frazee stated he was a licensed physician and surgeon in California. He completed a neurosurgical residency from 1977 to 1982 and had been a Diplomate of the American Board of Neurological Surgery since 1984. He also stated that from 1982 to 2019, he was an assistant, associate, or clinical professor of neurosurgery at "UCLA school of medicine," the "Chief of Neurosurgery at Wadsworth VA Medical Center," and the "director of the UCLA Neurosurgery Residency Training Program at West Los Angeles VA Medical Center." His curriculum vitae indicated that at the time of his declaration he continued to serve as a Director of UCLA Neurosurgery Residency Training. Dr. Frazee declared that based on his education, training, and experience, he was "intimately familiar" with the specific principals of medical causation applicable to this case.

Defendants contend Dr. Frazee's declaration should be rejected because it appears he has essentially been retired since 2019 and does not state when he last performed a neurosurgical procedure. But defendants do not cite any authority holding such factors are dispositive in determining whether an expert is qualified to testify. (Cf. *People v. Singleton* (2010) 182 Cal.App.4th 1, 21 [retired police officer qualified to testify as expert where officer had considerable experience with relevant subject matter].) Nor do defendants produce any evidence showing a physician with approximately 40 years of experience in the field of neurosurgery lacks the expertise necessary to

15

determine whether the care provided to McKenzie met the standard for patients undergoing similar surgeries. Defendants additionally assert not all records Dr. Frazee reviewed were before the trial court, but they do not identify the records or explain why their absence required striking Dr. Frazee's declaration.

Dr. Frazee's qualifications are sufficient to demonstrate skill and experience in the field of neurosurgery. (See *Jeffer, Mangels & Butler v. Glickman* (1991) 234 Cal.App.3d 1432, 1442 ["The determinative issue in each case must be whether the witness has sufficient skill or experience in the field so his testimony would be likely to assist the [finder of fact] in the search for the truth"].) Further, "'[w]hen a preliminary showing is made that the proposed witness has sufficient knowledge to qualify as an expert under the Evidence Code, questions about the depth or scope of his or her knowledge or experience go to the weight, not the admissibility, of the witness's testimony.'" (*People v. Jackson* (2016) 1 Cal.5th 269, 327–328.) The trial court did not abuse its discretion in overruling defendants' objection to Dr. Frazee's declaration.

4. *Dr. Frazee's Declaration Raises Triable Issues of Material Fact*

We begin by identifying the issues framed by the pleadings. (*Jameson, supra*, 215 Cal.App.4th at p. 1163.) McKenzie's medical malpractice claim alleges defendants were negligent in leaving a 6-0 Prolene needle in his body after the first surgery. McKenzie alleges that as a direct result of defendants' negligence, he was required to undergo the unplanned second

16

surgery to remove the needle, which caused him harm, including mental anguish and the cost of the second procedure.

Defendants carried their initial burden of production by supporting their motion for summary judgment with the declaration of their medical expert, Dr. Chou. (See *Jameson*, *supra*, 215 Cal.App.4th at p. 1168.) Dr. Chou indicated the 6-0 Prolene needle was "extremely small, thinner than a human hair," so it is very easy and not uncommon for the needle to separate from the thread and get lost. He opined that defendants complied with the applicable standard of care at all times because Liu and Hsieh were aware the needle was unaccounted for, there was no risk of injury or harm from the retained needle, and all reasonable steps to locate the needle prior to closing the wound that could be taken without exposing McKenzie to injury were taken. Dr. Chou further opined to a reasonable degree of medical probability that no negligent act or omission by defendants caused or contributed to McKenzie's alleged injuries, and that there was no evidence the retained needle or its removal caused McKenzie any harm.

In opposition, McKenzie raised a triable issue of fact as to both the standard of care and causation. Dr. Frazee opined Liu and Hsieh fell below the standard of care by failing to find the lost needle, knowing that the sponge and needle count was incorrect. Dr. Frazee stated Liu and Hsieh knew a needle artifact could make the diagnosis of a recurrent tumor difficult or even impossible based on Liu's second operative report. Although Dr. Chou stated there was nothing else that could have been done to find the retained needle prior to completing the surgical procedure, Dr. Frazee indicated that proceeding with "an emergent MRI to localize the needle would have been

17

appropriate[ ] while [McKenzie] was still under anesthesia." According to Dr. Frazee, "This would have avoided the risks of a second surgery and anesthesia, and would have shortened the hospital stay." Moreover, Dr. Frazee opined, "The failure to find the retained needle at the first surgery, let [*sic*] to additional risks and financial costs of a second anesthesia and surgery."[2] Liu admitted at his deposition that the second surgery was done solely to remove the needle.

Dr. Frazee's declaration is entitled to all favorable inferences that may be reasonably derived from it. (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.) In liberally construing Dr. Frazee's declaration, a jury could reasonably find McKenzie was subjected to a surgery that would have otherwise been unnecessary as a direct result of Liu's and Hsieh's breach of the standard of care.

The reasoning of *Tortorella v. Castro* (2006) 140 Cal.App.4th 1 (*Tortorella*) is instructive on explaining the harm McKenzie suffered. In *Tortorella*, a physician performed sinus surgery on a patient. (*Id.* at p. 4.) The patient filed a medical malpractice action alleging the physician was negligent in examining, diagnosing, and treating her. (*Id.* at pp. 4–5.) The physician moved for summary judgment, arguing he acted within the standard of care and did not cause the patient harm. (*Id.* at p. 5.) The patient opposed the motion and filed a declaration

---

[2] Dr. Frazee also states in his declaration, "Hsieh fell below the standard of care by dictating an incorrect operative report, stating that the needle count was correct at the end of the surgery. It is very clear from Dr. Liu's operative report of the second surgery, that both surgeons knew that the needle count was incorrect." However, Dr. Frazee does not offer any explanation as to how this conduct is relevant to any harm McKenzie suffered.

18

from an expert who stated the physician acted below the standard of care by performing an unnecessary surgery. (*Id.* at pp. 5–6.) The trial court, however, granted the motion for summary judgment, finding the patient failed to raise a triable issue of fact as to causation. (*Id.* at p. 6.)

The *Tortorella* court found the trial court erred in granting the motion. (*Tortorella*, *supra*, 140 Cal.App.4th at p. 10.) "Although the trial court read [the patient's expert] declaration as being silent with respect to the issue of causation, it seems self-evident that unnecessary surgery is injurious and causes harm to a patient. Even if a surgery is executed flawlessly, if the surgery were unnecessary, the surgery in and of itself constitutes harm." (*Id.* at p. 11.) "[A]ny unnecessary surgery is inherently injurious in that the patient needlessly has gone under the knife and has been subjected to pain and suffering." (*Id.* at p. 13.) Accordingly, the patient's expert declaration to the effect the surgery was unnecessary, was sufficient to raise a triable issue of fact "not only as to whether the performing of said surgery was a deviation from the standard of care, but also as to the presence of a causal connection between the negligent conduct and injury to the patient." (*Ibid.*, fn. omitted.)

As in *Tortorella*, McKenzie presented sufficient expert testimony that Liu's and Hsieh's breach of the standard of care caused him to undergo a needless second surgery, causing related pain and suffering. (See *Tortorella*, *supra*, 140 Cal.App.4th at p. 13; see also *Jameson*, *supra*, 215 Cal.App.4th at pp. 1167–1168.)

Defendants focus on the fact Dr. Frazee recognized the second "[s]urgery was successful in removing the retained needle without further complications," and they assert Dr. Frazee failed

to link the retention of the needle to any physical harm suffered by McKenzie.  However, Dr. Frazee opined Liu's and Hsieh's negligence directly necessitated the second surgery, which subjected McKenzie to additional invasions of his body, risks and financial costs.[3]  Stated differently, the expert testimony indicated McKenzie had to undergo an "'inherently injurious'" surgery and incur damages attendant thereto as a direct and proximate result of Liu's and Hsieh's negligence.[4]  (See *Jameson*, *supra*, 215 Cal.App.4th at p. 1168, citing *Tortorella*, *supra*, 140 Cal.App.4th at p. 13.)

Under these circumstances, McKenzie raised a triable issue of material fact not only as to whether failing to find the needle was a deviation from the standard of care, "but also as to the presence of a causal connection between the negligent conduct and injury to the patient." (*Tortorella*, *supra*, 140 Cal.App.4th at p. 13.)  Because USC's sole basis in moving for summary

---

[3]  Defendants contend Dr. Frazee did not identify the additional financial costs McKenzie incurred as a result of the second surgery.  However, McKenzie's billing records were submitted by defendants with their motion for summary judgment.  Defendants do not dispute the billing records show McKenzie incurred expenses for the second surgery.

[4]  To the extent McKenzie argues on appeal that an expert declaration was not required to oppose the motion for summary judgment because defendants' negligence was obvious to a layperson, as defendants contend, McKenzie failed to raise this theory for the trial court to consider.  It is not appropriate "to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)  McKenzie, therefore, forfeited this argument.

20

judgment was that Liu and Hsieh were entitled to judgment in their favor, the motion should have also been denied as to USC.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.  McKenzie is awarded costs on appeal.


MORI, J.

We concur:



CURREY, P. J.



ZUKIN, J.