[No. B195097. Second Dist., Div. Four. Jan. 14, 2008.]

NURIT AVIVI, Plaintiff and Appellant, v.
CENTRO MEDICO URGENTE MEDICAL CENTER et al., Defendants and Respondents.

COUNSEL

Law Offices of William J. Houser and William J. Houser for Plaintiff and Appellant.

Schuler & Brown, Michael D. Brown and Sam D. Ekizian for Defendants and Respondents.

OPINION

**EPSTEIN, P. J.**—Nurit Avivi appeals the trial court's grant of summary judgment in her malpractice claim against respondents Centro Medico Urgente Medical Center and Edward Rubin, M.D. She argues that her expert witness was qualified to provide an opinion about the standard of care to which respondents were held and that the expert's declaration, if admitted, would have established a triable issue of fact. The trial court excluded the declaration because the expert did not say he was familiar with the standard of care in Southern California. We conclude that the appropriate test for expert qualification in ordinary medical malpractice actions is whether the expert is familiar with circumstances similar to those of the respondents; familiarity with the standard of care in the particular community where the alleged malpractice occurred, while relevant, is generally not requisite, and is

not in this case. Because appellant's expert disclosed sufficient familiarity with similar circumstances to entitle a jury to hear his opinion, we reverse and remand with directions that the trial court deny summary judgment.

## FACTUAL AND PROCEDURAL HISTORY

On September 5, 2004, while visiting the United States from Israel, appellant injured her right hand and arm in a fall. At respondent medical center, "physician assistants" (nonphysicians) set her arm in a splint and gave her pain medication. She returned to respondents for followup examinations on September 6 and September 9. At these examinations, she complained about continued pain and swelling. The physician assistants gave her additional pain medication and instructed her to keep wearing the splint.

After she returned to Israel, appellant had her arm examined by an orthopedist, Dr. Arieh Arielli, on September 23, 2004. Dr. Arielli observed that the fingers on her right hand were blue, cold and stiff. He concluded that respondents' splint restricted the blood circulation in her right arm because it had been applied too tightly. He removed the splint and replaced it with a full cast. On December 14, 2004, Dr. Arielli diagnosed appellant with a number of permanent injuries from the splinting of her arm.

On September 1, 2005, appellant brought a medical malpractice action against respondents. Respondents moved for summary judgment on April 13, 2006. In support, respondents submitted the declaration of Dr. Charles S. Lane, a surgeon who had practiced and taught hand surgery in the Los Angeles area for several years. According to Dr. Lane, respondents' treatment of appellant was reasonable and within the standard of care in the local medical community.

In opposition, appellant submitted the declaration of Dr. Arielli. Dr. Arielli stated he had treated thousands of fractures during his career, and had spoken with American doctors and reviewed American publications regarding the treatment of fractures in the United States. However, Dr. Arielli did not explicitly state that he was familiar with the local standard of medical care in the community where respondents treated appellant, and respondents objected to his declaration on that ground.

At the hearing on the summary judgment motion, the trial court ruled that Dr. Arielli's opinion was not admissible because Dr. Arielli was not familiar with the standard of care in Southern California. Because Dr. Arielli's was the only expert declaration appellant offered to dispute Dr. Lane's declaration, the trial court ruled appellant had failed to show the existence of a triable

issue of fact as to respondents' negligence and granted summary judgment. This is a timely appeal from the entry of judgment.

## DISCUSSION

Appellant argues that summary judgment is inappropriate because Dr. Arielli's testimony establishes a dispute over whether respondents were negligent. We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) However, any determination underlying the order granting summary judgment is reviewed under the standard appropriate to that determination. (*Id.* at p. 859.) A court's decision to exclude expert testimony is reviewed for abuse of discretion. (*People v. Bolin* (1998) 18 Cal.4th 297, 321–322 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

■ When the defendant moves for summary judgment and makes a prima facie showing that one or more elements of the plaintiff's cause of action cannot be established, the burden shifts to the plaintiff to make a prima facie showing that the element in question can be established. (Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra,* 25 Cal.4th at pp. 849–851.) If the plaintiff cannot do so, summary judgment should be granted. (Code Civ. Proc., § 437c, subd. (*o*)(1).) When deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment. (Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra,* 25 Cal.4th at p. 843.) Both the standard of care and a defendant's breach must normally be established by expert testimony in a medical malpractice case.[1]

■ In order to testify as an expert in a medical malpractice case, a person must have enough knowledge, learning and skill with the relevant subject to speak with authority, and he or she must be familiar with the standard of care to which the defendant was held. (Evid. Code, § 720, subd. (a); *Ammon v. Superior Court* (1988) 205 Cal.App.3d 783, 790–791 [252 Cal.Rptr. 748].) An expert may base his or her opinion on any matter reasonably relied upon by experts in forming opinions about the particular subject matter in question, except when the law precludes consideration of a particular matter. (Evid. Code, § 801, subd. (b).) If the expert has disclosed sufficient knowledge of

---

[1] In medical malpractice cases where the conduct in question is within the common knowledge of laypersons, expert testimony may be unnecessary, such as cases where the plaintiff can invoke the doctrine of res ipsa loquitur. (See *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [35 Cal.Rptr.2d 685, 884 P.2d 142].) That is not the claim before us.

the subject to entitle his or her opinion to go to the jury, the court abuses its discretion by excluding his or her testimony. (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 39 [210 Cal.Rptr. 762, 694 P.2d 1134].)

In this case, defendants' expert Dr. Lane stated that he was familiar with the standard of care in the Los Angeles medical community, that respondents acted reasonably and appropriately and that respondents' actions were within the community's standard of care. Dr. Lane's declaration was sufficient to make a prima facie showing that appellant could not establish the breach of duty element of her cause of action.[2] Thus, the burden shifted to her to make a prima facie showing of a triable issue that respondents breached their duty of care. (*Hanson v. Grode, supra,* 76 Cal.App.4th at pp. 606–607 [90 Cal.Rptr.2d 396].) To make that showing, appellant submitted the declaration of a single expert, Dr. Arielli.

The trial court excluded Dr. Arielli's declaration because he did not demonstrate familiarity with the standard of care in Southern California. The relevance of geographic location to expert qualification in medical malpractice cases has evolved over time. Several Supreme Court decisions from the first half of the 20th century mention location either in their formulation of the standard of care or in their summary of the requirements an expert must meet in order to testify about the standard of care. (See *McCurdy v. Hatfield* (1947) 30 Cal.2d 492, 495 [183 P.2d 269]; *Lawless v. Calaway* (1944) 24 Cal.2d 81, 86 [147 P.2d 604]; *Trindle v. Wheeler* (1943) 23 Cal.2d 330, 333 [143 P.2d 932]; *Lewis v. Johnson* (1939) 12 Cal.2d 558, 561 [86 P.2d 99]; *Hesler v. California Hospital Co.* (1918) 178 Cal. 764, 767 [174 P. 654].)

In 1949, the Supreme Court held that "[t]he essential factor" in determining the qualification of an expert witness in medical malpractice cases "is knowledge of similarity of conditions; geographical proximity is only one factor to be considered." (*Sinz v. Owens* (1949) 33 Cal.2d 749, 756 [205 P.2d 3].) "[G]eographical generalizations or localizations do not provide a practical basis for measuring 'similar circumstances.' " (*Id.* at p. 755.) Instead, "the question as to what constitutes similar circumstances . . . presents an issue which concerns the competency of a person called to testify as a witness, and must be decided upon a consideration of all relevant evidence." (*Ibid.*) Since then, the Supreme Court has formulated the standard of care as that of physicians in similar *circumstances* rather than similar *locations*. (See

---

[2] The elements of a medical malpractice claim are: " ' "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." [Citation.]' " (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606 [90 Cal.Rptr.2d 396].)

*Barris v. County of Los Angeles* (1999) 20 Cal.4th 101, 108, fn. 1 [83 Cal.Rptr.2d 145, 972 P.2d 966]; *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1081 [9 Cal.Rptr.2d 615, 831 P.2d 1197]; *Mann v. Cracchiolo, supra,* 38 Cal.3d at p. 36; *Landeros v. Flood* (1976) 17 Cal.3d 399, 408 [131 Cal.Rptr. 69, 551 P.2d 389], superseded by statute [see *People v. Davis* (2005) 126 Cal.App.4th 1416 [25 Cal.Rptr.3d 92]]; *Brown v. Colm* (1974) 11 Cal.3d 639, 642–643 [114 Cal.Rptr. 128, 522 P.2d 688]; *Bardessono v. Michels* (1970) 3 Cal.3d 780, 788 [91 Cal.Rptr. 760, 478 P.2d 480]; *Moore v. Belt* (1949) 34 Cal.2d 525, 532 [212 P.2d 509]; cf. *Huffman v. Lindquist* (1951) 37 Cal.2d 465, 473, 478 [234 P.2d 34] [stating the standard of care for physicians in terms of locality and the standard of care for medical experts in terms of similar circumstances].)

When the Supreme Court reduced knowledge of the standard of practice in a locality from a requisite to a factor, it said that "geographical generalizations or localizations do not provide a practical basis for measuring 'similar circumstances.' " (*Sinz v. Owens, supra,* 33 Cal.2d at p. 755.) The court observed that the "sole purpose" justifying the locality rule is protecting physicians in small, rural communities from being held to a standard of care that they may not have the opportunities and resources to meet, and it noted that by 1949, " 'rapid methods of transportation and easy means of communication' " had weakened this justification. (*Id.* at pp. 754, 755.) Six years later, an appellate court rejected a challenge to an expert based on geographic location as "archaic," a holdover from "former days when distances were great and the mode of travel was in keeping with muddy lanes, swollen streams and impassable mountains; when the means of communication were restricted to handwritten letters; when medical journals were rare and their contents were largely concerning personalities." (*Gist v. French* (1955) 136 Cal.App.2d 247, 269 [288 P.2d 1003], disapproved on other grounds in *Deshotel v. Atchison, T. & S. F. Ry. Co.* (1958) 50 Cal.2d 664, 667 [328 P.2d 449] and *West v. City of San Diego* (1960) 54 Cal.2d 469, 478 [6 Cal.Rptr. 289, 353 P.2d 929].)[3]

In *Rainer v. Community Memorial Hosp.* (1971) 18 Cal.App.3d 240, 259 [95 Cal.Rptr. 901], the court considered whether geographic location is irrelevant to the standard of care under the " 'similar circumstances' " test. Although the court resolved the issue on other grounds, it apparently concluded that geographic location is still sometimes relevant. (*Ibid.*) Appellate courts occasionally include location in either their discussion or their formulation of the standard of care. (See *Williamson v. Prida* (1999) 75 Cal.App.4th 1417, 1424, 1426 [89 Cal.Rptr.2d 868]; *Mercado v. Leong* (1996) 43

---

[3] *Deshotel v. Atchison, T. & S. F. Ry. Co.* and *West v. City of San Diego* were overruled on other grounds in *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408 [115 Cal.Rptr. 765, 525 P.2d 669].

Cal.App.4th 317, 326 [50 Cal.Rptr.2d 569].) Judicial Council of California Civil Jury Instructions (2005) CACI No. 501 expresses the standard of care in terms of same or similar circumstances and does not mention location.[4]

A recent article in the Journal of the American Medical Association states that it has become increasingly difficult to justify defining a physician's standard of care by geographic location. (Lewis et al., *The Locality Rule and the Physician's Dilemma* (June 20, 2007) 297 JAMA 2633, 2634.) Modern technology and standardized medical education now give rural and urban physicians generally the same access to information for patient care. (*Ibid.*) The article calls for a national standard of care in which location may be considered, but only with respect to what facilities, resources or subspecialist physicians are available. (*Id.* at p. 2636.)

By statute, in medical malpractice actions against physicians who provide "emergency medical services" in "general acute care hospital emergency department[s]," the standard of care includes a "same or similar locality" requirement. (Health & Saf. Code, § 1799.110, subd. (a).) In such cases, only physicians who have had "substantial professional experience" in general acute care hospital emergency departments in the same or similar locality in the five years before the alleged malpractice occurred may testify as expert witnesses. (Health & Saf. Code, § 1799.110, subd. (c); *Petrou v. South Coast Emergency Group* (2004) 119 Cal.App.4th 1090, 1094 [15 Cal.Rptr.3d 64].) Whether Health and Safety Code section 1799.110 applies is not before us; neither appellant nor respondents argue that it does, and the trial court did not apply it.

 Our review of the law shows that, except in cases where Health and Safety Code section 1799.110 applies, the standard of care for physicians is the reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of the medical profession *under similar circumstances.* (*Mann v. Cracchiolo, supra,* 38 Cal.3d at p. 36.) The test for determining familiarity with the standard of care is knowledge of similar conditions. (*Sinz v. Owens, supra,* 33 Cal.2d at p. 756.) Geographical location may be a factor considered in making that determination, but, by itself, does not provide a practical basis for measuring similar circumstances. (*Id.* at pp. 755–756; see also *Rainer v. Community Memorial Hosp., supra,* 18 Cal.App.3d at pp. 259–260.) Over 30 years ago, our Supreme Court observed that "[t]he unmistakable general trend . . . has been toward liberalizing the

---

[4] CACI No. 501 was originally adopted in September 2003 and revised twice, in October 2004 and December 2005. The most recent version was in effect when the trial court ruled on July 14, 2006. Neither the original version nor either of the amendments refers to location.

rules relating to the testimonial qualifications of medical experts." (*Brown v. Colm, supra,* 11 Cal.3d at p. 645.) We review the trial court's decision with these principles in mind.

Dr. Arielli declared that he had practiced orthopedics for 27 years, had treated thousands of patients with injuries similar to appellant's, had numerous contacts with doctors from the United States regarding treatment of injuries similar to appellant's, had reviewed many publications on treatment of fractures in the United States, and that treating a fracture would be handled similarly in Israel as in the United States. Read in the light most favorable to appellant, Dr. Arielli's statements demonstrate that he was generally familiar with the standard of care for treating fractures in the United States, and with treating fractures in circumstances similar to appellant's. It was not necessary that he also state familiarity with the standard of care in Southern California.

*Murphy v. Little* (1965) 112 Ga.App. 517 [145 S.E.2d 760] is remarkably analogous to the present case. The plaintiff sustained exactly the same type of injury appellant did: a broken arm that the defendant bound too tightly, cutting off the blood supply to the plaintiff's hand. (*Id.,* 145 S.E.2d at p. 761.) The plaintiff relied on the declaration of a single expert to establish the defendant's breach of the standard of care, but the trial court excluded the declaration on geographic location grounds and granted summary judgment. (The expert practiced in Virginia, not Georgia.) (*Id.* at pp. 761–763.) The Georgia court found this to be an abuse of discretion. (*Id.* at p. 764.) It noted that "Hippocrates wrote a treatise, 'On Fractures' in the fourth century B.C. in which he observed that a 'blackening of the swelling' of the injured limb might result, among other causes, from the tightness of the bandage." (*Ibid.*) Moreover, "[t]here are doubtless areas of medicine where knowledge of proper treatment is limited geographically by prevalence of the disease or by reason of special facilities for study, but the human race has suffered from broken bones for as long as it has been in existence." (*Ibid.*)

■ We agree with the Georgia court that there may be areas of medicine in which geographic location is especially relevant to a determination of an expert witness's qualifications. For example, some locations may only have access to limited resources, or a particular malady may be confined to a small geographic area. In such cases, location may be a significant factor in the "similar circumstances" test our Supreme Court has laid out. But appellant's injury appears to be so common and simple that respondent medical center permitted nonphysicians to treat it. Respondents did not present any evidence tending to show that the standard of treatment for such a fracture in Southern California differed from standard practice anywhere else in the United States.

The trial court said, "The most liberal interpretation would not allow foreign doctors from another country to say this was within the standard of

care unless they had practiced here for some time." But neither the Evidence Code nor Supreme Court precedent requires an expert witness to have practiced in a particular locality before he or she can render an opinion in an ordinary medical malpractice case. That requirement would effectively reinstate location as the touchstone for the standard of care.

The trial court expressed concern about "opening up the standard of care to foreign countries." But appellant did not claim Dr. Arielli's declaration was admissible because Dr. Arielli was familiar with the Israeli standard of care; rather, appellant repeatedly claimed it was admissible because Dr. Arielli's statement showed he was familiar with the standard of care in the United States.

The trial court also reasoned that Dr. Arielli's declaration was inadmissible because it did not provide a clear, express opinion that respondents' treatment caused appellant's injuries. Paragraph Nos. 6, 12 and 14 of Dr. Arielli's declaration, read in the light most favorable to appellant, stated that respondents caused appellant's injuries by applying the splint too tightly. Respondents' contention that Dr. Arielli's declaration is speculative is without merit. The declaration clearly links respondents' concrete actions to appellant's concrete harm; the mere fact that Dr. Arielli used the word "belief" rather than some other term does not indicate speculation or uncertainty, especially when the declaration is read in the light most favorable to appellant.

While the qualification of an expert witness requires exercise of trial court discretion, the court abuses its discretion by denying qualification if the witness has demonstrated sufficient knowledge of the subject to entitle his or her opinion to go before the jury. (*Brown v. Colm, supra*, 11 Cal.3d at pp. 646–647.) Because Dr. Arielli did so with respect to the treatment of fractures, the trial court improperly excluded his declaration in deciding whether appellant presented a triable issue of material fact.

■ The exclusion of the sole expert relied upon by a party because of an erroneous view of his or her qualifications in a case where expert testimony is essential is an abuse of discretion, requiring reversal. (*Brown v. Colm, supra*, 11 Cal.3d at p. 647.) Here, the trial court relied on a test that has been outmoded for more than 50 years to exclude the sole expert relied upon by appellant at summary judgment. Because the court's grant of summary judgment rested upon the exclusion of Dr. Arielli's declaration, summary judgment was inappropriate.

## DISPOSITION

The judgment is reversed and remanded to the trial court with directions to deny respondents' summary judgment motion. Appellant is to recover her costs on appeal.

Manella, J., and Suzukawa, J., concurred.

On January 24, 2008, the opinion was modified to read as printed above.