Filed 6/9/15  Saliba v. St. Joseph Hospital of Orange CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FRED SALIBA,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>ST. JOSEPH HOSPITAL OF ORANGE,<br><br>    Defendant and Respondent. | G049146<br><br>(Super. Ct. No. 30-2011-00453927)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Thierry Patrick Colaw, Judge.  Affirmed.

Joseph S. Park and Fred Saliba, in pro. per., for Plaintiff and Appellant.

Carroll, Kelly, Trotter, Franzen, McKenna & Peabody, Michael J. Trotter, Brenda M. Ligorsky, and David P. Pruett for Defendant and Respondent.

\*          \*          \*

Fred Saliba appeals from the trial court's order dismissing his medical malpractice claim against St. Joseph Hospital of Orange (the hospital) after the trial court entered terminating sanctions against him. Neither Saliba nor counsel appeared at a scheduled hearing on whether to impose issue sanctions or terminating sanctions for Saliba's longstanding discovery violations, and neither responded substantively to the trial court's subsequent request for briefing on which sanctions to impose. Although represented by counsel, Saliba did not explain in a cursory opposition to sanctions how his lawsuit would survive *issue* sanctions precluding any new evidence of damages based on his failure to respond to the hospital's discovery requests for evidence of his damages. In other words, Saliba pointed to no responsive deposition testimony and identified no witnesses, documentation, or any other evidence he had provided in discovery to that date to support *any aspect* of the damages element of his malpractice cause of action.

The court already had continued the trial once on the eve of trial and given Saliba five more months to seek help for his mental illness and a total of 10 months to answer the requested discovery. But neither Saliba nor counsel took any action during that time. (Code Civ. Proc., § 375 ["An action or proceeding does not abate by the disability of a party"].) As this court observed in *Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 491, "[T]he issue before us is not what sanction we would have imposed, but whether the trial court abused its discretion in ordering dismissal as a sanction." Faced with Saliba's failure to identify any damages evidence that would survive issue sanctions to support his lone claim against the hospital, we cannot say the trial court abused its discretion in entering terminating sanctions for his failure to participate in the discovery process and move his case forward. We therefore affirm the trial court's dismissal order.

# I

## FACTUAL AND PROCEDURAL BACKGROUND

Saliba filed in March 2010 an initial lawsuit against the hospital and several doctors or psychologists who apparently worked at the hospital, but then dismissed it in November 2010. He filed this action in March 2011 alleging in a form complaint two causes of action: assault and battery against Michael Emmi, Jr., and medical malpractice against the hospital. On the second cause of action, the complaint alleged the hospital and "Does 11 to 20 committed malpractice as follows: [¶] . . . Plaintiff was voluntarily admitted [to the hospital] for a psychiatric evaluation and was transferred to Behavioral Health Services within the hospital. When transferred to said department, the Defendant allowed Plaintiff to be placed in a room with another patient [Emmi], who became agitated, delusional and violent against the Plaintiff. Said patient proceeded to attack the Plaintiff and cause him significant injuries. The Defendant's care of Plaintiff fell below the standard [of care] in their placement of the patients, evaluations of incoming patients, specifically co-defendant, monitoring of patients, staffing and supervision of patients. As a result of same, the Plaintiff suffered significant injuries and has incurred medical expenses to cure and relieve the effects of said injuries."

After the hospital answered the complaint and the parties conducted an initial round of discovery, the hospital moved for summary judgment on grounds it was not responsible for Saliba's alleged injuries. According to the hospital, psychiatric placement decisions, including Saliba's claim Emmi should not have been placed in a double-occupancy room, are made "by the admitting psychiatrist," an independent contractor and health care provider, "not by the [hospital's] nursing staff," and the hospital also introduced evidence "that the management and monitoring of both Saliba and Emmi were provided in accordance with the standard of care."

The trial court denied summary judgment on multiple independent grounds, noting both fatal defects in the hospital's separate statement of material facts and finding

triable issues of fact, including on the standard of care. Saliba had submitted in opposition to summary judgment the declaration of Dr. Carole Lieberman, a psychiatrist, who opined that while Emmi had been admitted to the hospital "on an involuntary hold as a Danger to Self and Gravely Disabled," he "should have also been admitted as a Danger to Others, based upon his history and mental status. St. Joseph Hospital should never have placed Michael Emmi (19 years old) in the same room as Fred Saliba (40 years old), given Mr. Emmi's volatile mental state and Mr. Saliba's vulnerable mental state. Indeed, it is unlikely that any patient would have been safe from Mr. Emmi, and he should have been given his own room and/or placed on 1:1 supervision."

Notably, following the trial court's denial of summary judgment, Saliba did not designate Lieberman or anyone else as an expert to testify at trial on the applicable standard of care. (See *Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467 ["Both the standard of care and [the] defendants' breach must normally be established by expert testimony in a medical malpractice case"].)

In any event, a second round of discovery commenced in which the hospital served on Saliba interrogatories aimed at eliciting collateral source information pertinent to his alleged injuries (e.g., disability, social security, or insurance or other coverage based on his alleged injuries) and to identify and substantiate his alleged medical expenses, loss of earnings or earning capacity, and general damages ("pain, discomfort, anxiety, emotional distress, inconvenience, physical impairment or disfigurement"). The hospital served the interrogatories on September 25, 2012, with ample time for Saliba's response before the March 2013 trial date.

Saliba's initial response asserted damages of $1,325,500, but he did not substantiate them with any of the documentation as the hospital had requested. Plaintiff simply listed the following amounts: weekly psychotherapy, $110,000; psychiatric hospitalizations, $75,000; treatment for erectile dysfunction, $50,000; other medical treatment for physical injuries, $50,000; past medical bills, $175,000; loss of future

4

income, $240,000; "Loss of Past [*sic*: Potential?] Wages as Arabic Translator in Iraq," $390,000; general damages, $250,000; and court costs and fees of $12,500. Saliba promised as required (Code Civ. Proc., § 2030.230) to "produce and/or afford propounding party a reasonable opportunity to examine, audit, or inspect these bills, receipts, canceled check documents and to make copies, compilations, abstracts, or summaries." Saliba never did so, and the hospital's meet and confer attempts were fruitless. The hospital filed a motion to compel Saliba's compliance, set to be heard on January 25, 2013.

The hospital also had served in mid-November 2012 targeted "pre-trial" interrogatories in anticipation of trial, requesting that Saliba update any information he may have provided in prior discovery, specifically on the topics of: (1) economic damages; (2) damages susceptible to offset, and (3) "each and every contention or theory of *liability* known to you at this time that you will or may raise at the time of trial against this defendant." (Italics added.) The "pre-trial" discovery request also sought production of any evidence to support "any specific contentions of medical negligence that you intend to advance at the time of trial" and "evidence you intend to introduce at the time of trial [to support] physical or mental injuries you claim were occasioned by the alleged negligence of defendants." When Saliba did not respond to the hospital's pretrial discovery request or a follow-up demand on its earlier request for supporting documentation, the hospital filed another motion to compel his compliance. The motion was originally set to be heard on February 1, 2012, but the hospital filed an ex parte motion (with notice to Saliba) for the hearing to be consolidated with the January 25 hearing on its earlier pending motion to compel discovery.

Saliba's attorney did not appear at the January 25, 2013 hearing, but counsel for the hospital contacted him before the hearing and conveyed to the court that "he doesn't have any opposition to the motions." Consequently, with the trial date set for March 4, 2013, the trial court granted the hospital's motions to compel Saliba's

5

compliance with his discovery obligations and ordered Saliba to file his discovery responses by February 19, 2013.

He failed to do so. Neither he nor counsel responded to the discovery requests for evidence or documentation substantiating his alleged damages, nor the hospital's requests to detail "every contention or theory of liability," or its "pre-trial" requests that Saliba identify and provide evidence he intended to introduce at trial of the hospital's negligence or Saliba's physical or mental injuries attributable to the alleged negligence.

Meanwhile, the hospital became concerned about Saliba's competency to testify, if he elected to testify at trial. Saliba had submitted under discovery code procedures to a medical exam on December 14, 2012, by an expert for the hospital, Dr. Thomas Garrick, a psychiatrist. Garrick concluded Saliba was mentally impaired at that time and unable to understand the importance or nature of the "legal process itself." A follow-up exam with a different expert for the hospital, Dr. Edwin Amos, reaffirmed Saliba was not mentally sound at that time. Apparently Saliba suffered from intermittent and recurring bouts of mental illness, sometimes brought on by stress.

The hospital had filed a motion for sanctions when no one on Saliba's legal team responded to the trial court's order compelling discovery, and the hospital separately filed a motion to prohibit Saliba from testifying at trial, based on his mental state. The trial court considered the motions in a combined hearing near the end of February 2013, where the court expressed concern about the impending trial date on March 4, 2013, just two weeks away. The trial court also expressed concern that Saliba's attorney, Peter Suk Park, did not appear at the hearing.

The hospital also noted Park's absence at its deposition of Saliba's treating psychiatrist, who observed at that time that Saliba's "underlying mental illness prevented him from understanding the difference between fact and fantasy." Saliba did not appear at the hearing, so the trial court had no firsthand knowledge of his current mental state,

but the court noted the emerging reports of his condition made for "a very awkward lawsuit involving the hospital, and, apparently, a disabled Mr. Saliba." The hospital expressed concern that the discovery cut-off date had passed, and plaintiff's counsel had not designated any experts to testify at trial, including a failure to designate an expert on the issue of the applicable standard of care or defendant's alleged breach. The trial court continued the hearing to February 21, 2013 for further consideration.

Saliba's attorney appeared at the hearing and requested more time based on Saliba's mental issues. The trial court observed, "[W]hat I'm gathering from what you're saying is you're saying that the just thing to do is to postpone the trial indefinitely and 'Let me see if I can't get my guy straightened out. And if I can't get him straightened out, we'll then appoint a conservator.' [¶] And then you really don't tell me what's going to happen after that. I mean, is the case going to proceed with a conservator giving you directions on what to do . . . . [¶] I mean, how does that get us away from — I mean, how are you going to prove the case if he can't testify? That's where I'm going." Counsel offered no answer.

The trial court fashioned an interim solution by continuing the trial, while declining to waive the discovery cut-off date or to vacate its discovery order requiring Saliba's compliance. The court explained, "All I'm going to do is to continue the motion[] for terminating sanctions or issue sanctions for a reasonable period of time to re-visit whether I should put limits on what loss-of-earnings claim your guy is going to be able to make. And I'll give him some time to try and get some help and then answer these interrogatories, but we're not going to go into this trial with Mr. Saliba incompetent and the defense trying to guess what it is that your conservator — if that's what it comes to . . . is going to say or come up with."

The court encouraged Park to obtain the "neuropsych" evaluation on which he premised his request for a continuance, and to obtain "all the health care" possible for Saliba. The court cautioned, "We'll find out whether they can get him so he can answer

7

some interrogatories. And if he can't, then I'm going to issue sanctions. Because you're not going to be able to — you're still going to be — he's still going to be disobeying a court order, and it's not fair to the other side to have to guess at what the evidence is going to be." The court set a new trial date almost five months away, on July 12, 2013, and a status conference on June 20, 2013.

The minute order from the unreported status conference on June 20, 2013, reflected only that Saliba's attorney intended to file a motion to be relieved as counsel. No such motion was filed and the hospital's motion for sanctions remained set for hearing on the July 12, 2013 trial date.

Counsel for Saliba did not appear at the hearing on July 12, 2013. The trial court issued a tentative ruling granting the hospital's unopposed sanctions motion, but continued the matter for two weeks for the parties to brief whether issue sanctions or terminating sanctions were appropriate.

Park submitted only a paragraph on the question of whether the trial court should impose terminating or issue sanctions. Park wrote: "Terminating sanctions [are] overly harsh, given that Defendant[] [is] complaining about discovery that has already been responded to and that involve a narrow area of inquiry which is Plaintiff[']s lost income. A discovery sanction may not place the party seeking discovery in a better position than it would have been in if the desired discovery had been provided and had been favorable. (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793.)" Park concluded in a confusing fashion, "Here, at best, [had the desired discovery been provided with responses favorable to the hospital], Defendant could have prevailed at trial on the second cause of action only." The response was confused and perhaps nonsensical because the complaint's *only* cause of action against the hospital was the second one, i.e., for medical malpractice. Accordingly, issue sanctions on damages resulting in a favorable verdict for the hospital at trial on the second cause of action would result in a defense judgment.

8

In any event, the hospital had explained in its briefing that its discovery requests were not aimed solely at the issue of damages, as Saliba now claimed. True, Saliba provided no medical bills or other documentation to support his damages calculations, and there was apparently no prospect he would testify to support his damage claims. But the discovery requests *also* had requested plaintiff to identify witnesses "to support his contentions of liability, injuries and damages," and he identified none, nor did Park in opposing sanctions point to any witnesses he or Saliba had identified on the question of damages, liability, or his injuries. The discovery requests also had sought production of any *evidence* to support "any specific contentions of medical *negligence* that you intend to advance at the time of trial" and "*evidence* you intend to introduce at the time of trial [to support] physical or mental *injuries* you claim were occasioned by the alleged negligence of defendants." (Italics added.) In other words, it appears Saliba failed in his discovery responses to provide testimonial, documentary, or other evidence of damages *or liability*, and failed in opposing sanctions to identify any discovery responses or other evidentiary basis on which his malpractice claim could go forward if only partial sanctions were imposed.

Park appeared at the July 26, 2013 hearing on terminating or issue sanctions and argued only that *no* sanctions should be imposed. He argued, "[W]e tried to get some discovery, but our client, as you may remember, is mentally unavailable, and for the last few months I was not even able to get in touch with him because part of that time, since early this year, he has been homeless. So he's mentally not there and both our expert and their expert say he's, I don't know, [in] layman's terms, crazy." Park had last contacted Saliba about a month earlier.

Counsel did not suggest that if issue sanctions were imposed — for example to eliminate damages for lost earnings — that he was ready to proceed to trial because he had provided responsive discovery identifying and substantiating other claims of damage with documentation or by identifying witnesses who could testify on those

9

claims. Similarly, he did not state at the hearing or in his briefing that if the trial court imposed issue sanctions limiting Saliba's damage categories, he nevertheless had identified and provided in responsive discovery the evidence he intended to introduce at trial concerning the hospital's liability or negligence.

Instead, counsel simply requested "maybe [a] two months extension." Faced with no evidence of efforts to restore Saliba's mental health or prospects of success in doing so, and no evidence of an attempt to appoint a conservator or guardian ad litem or otherwise to attempt to proceed with the case, the trial court anticipated further similar extension requests, querying, "What do I do[,] just wait around?  What does Miss Solmayor and her client do, just wait around for the five years[?]"  The court observed, "It's not fair to her client to wait until just before the five years and then suddenly have to go to trial when she's hasn't been able to do discovery on your guy.  This case is perfect for the court to dismiss for failure to prosecute, disobeying the court orders and a host of other reasons."

The trial court took the matter under submission and subsequently issued an order granting the hospital's motion for terminating sanctions.  Saliba now appeals.

II

DISCUSSION

Saliba contends the trial court abused its discretion by imposing terminating sanctions.  First, he argues that from its inception the issue of sanctions was not properly before the court because the hospital failed to provide him proper notice of its ex parte motion to set a hearing date on its motions to compel his discovery responses.  As a result, he contends he "was not able to appear nor given an opportunity to oppose the ex parte applications" to compel his discovery responses.  Saliba, however, does not identify any specific timing requirements or notice procedures that the hospital allegedly violated. It appears the hospital gave the requisite notice of its ex parte applications to compel Saliba's discovery responses, including notice of a consolidated hearing on January 25,

10

2013, instead of setting one motion for a hearing on that date and another a week later on February 1st. (See Cal. Rules of Court, Rule 3.1203 [notice at a minimum by 10:00 a.m. on the preceding court day, absent exceptional circumstances].)

In any event, Saliba does not dispute that his attorney knew of the hearing dates and told the hospital he would not appear to contest its motions to compel discovery and that Saliba had no opposition to entry of an order compelling his discovery responses. Presumably, counsel at that time hoped to gain his client's discovery compliance. While that hope proved unfounded, Saliba's statement through counsel that he was aware of the hearing, chose not to appear, and did not oppose entry of court orders compelling discovery waived any conceivable notice defect. (Cf. *Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 7-8 [defect in notice of hearing waived where counsel appears "even when no notice was given at all"].)

Second, Saliba contends his discovery violations cannot be regarded as willful because he was not of sound mind, and therefore the court should not have imposed terminating sanctions. This claim is misplaced, however, because Saliba has never disputed the trial court was entitled to impose *issue* sanctions for his failure to present through responsive discovery prima facie evidence to support his claims of *lost earnings or lost earning potential*. After all, as the plaintiff he bore the burden of proof on his cause of action and his damages claim necessarily would fail at trial in the absence of evidence. As noted, a plaintiff's lawsuit does not abate because of his or her disability (Code Civ. Proc., § 375), but rather must go forward or be dismissed. A litigant may not "turn a deaf ear to the processes of the court with impunity, thus precluding effective judicial administration at the trial court level." (*Bernstein v. Allstate Insurance Co.* (1981) 119 Cal.App.3d 449, 451.)

Like the trial court, we are sympathetic to the dilemma posed by Saliba's apparently deteriorating mental state. The dilemma was not limited in effect to plaintiff's counsel, but extended to opposing counsel and the trial court. (See Abeles, *The Dilemma*

11

*Posed by an Opposing Party with Diminished Capacity* (Nov. 2007) Los Angeles Lawyer 80 (hereafter Abeles) [decrying absence of California "rules and regulations that provide any guidance in such situations" and imploring lawmakers "to put formal procedures into place that guide . . . attorneys, opposing counsel, and the court [how to] deal with these issues"].) Primary responsibility fell to plaintiff's counsel, who may seek appointment of a guardian ad litem (GAL) through the intercession of a relative, a friend, or by court intervention. (Code Civ. Proc., § 373, subd. (c); see Abeles, *supra*, [observing, "There can simply be no judicious outcome if one of the parties lacks the capacity to understand the proceedings, and his or her attorney refuses to provide the required clarity"].)

Here, the court continued the trial for five months and generously afforded more than 10 months from the initial discovery requests for counsel or Saliba to respond or to develop a plan to proceed, but after providing the continuance on the eve of the first trial date, the court heard nothing from counsel or Saliba. Notably, Saliba does *not* argue the trial court should have granted counsel's belated suggestion after the second trial date passed for a "two months continuance." Counsel raised this possibility in an offhand manner without notice or a supporting declaration and after skipping the sanctions hearing and with no indication counsel would seek medical aid for Saliba or a GAL appointment.

Instead, Saliba's primary claim is that the trial court erred in imposing terminating sanctions instead of lesser, issue-preclusion sanctions. But in opposing sanctions, Saliba never argued he was ready to proceed to trial because he had provided responsive discovery identifying and substantiating particular claims of damage with documentation or by identifying witnesses who could testify on those claims. While there is an abstract or theoretical possibility such evidence could exist, Saliba never pointed to evidence he furnished the hospital in responsive discovery requests to support his claims at trial. Similarly, he did not state at the sanctions hearing or in his opposition that if the trial court imposed issue sanctions limiting Saliba's damage categories, he

12

nevertheless had identified and provided in responsive discovery the evidence he intended to introduce at trial concerning *other* particular categories of damages. Nor did he identify responsive discovery evidence to establish the hospital's negligence liability. He thus failed to point to evidence he had provided in discovery to support essential elements of his malpractice claim: namely, liability and damages. In essence, in now arguing for imposition of issue sanctions instead of terminating sanctions, Saliba seeks to go to trial without any indication he provided the trial court with notice of discovery evidence to support his case at trial. Because Saliba failed to offer any substantive opposition to sanctions, we cannot say the trial court abused its discretion in imposing them.

## III

## DISPOSITION

The trial court's dismissal order is affirmed. The parties shall bear their own costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

13