Filed 12/18/23  Lam v. Fan CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TAK WAH LUKA LAM et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> HENRY FAN, as Special Administrator, etc., <br><br> Defendant and Respondent. | B312589 <br><br> Los Angeles County <br> Super. Ct. No. BC716001 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Judge. Affirmed.

Lew Law Firm and Bill W. Lew for Plaintiffs and Appellants.

Emmanuel Nwabuzor and Travis M. Poteat for Defendant and Respondent.

## INTRODUCTION

This case concerns a transaction involving Chinese real estate. Following a bench trial, the trial court ruled plaintiffs, Tak Wah Luka Lam and Mei Lin Tsang (collectively, the Buyers), failed to prove defendants, Chau Han Fan and Siu Ying Fan (collectively, the Sellers), were liable for promissory fraud.[1] Based on this finding, the court further concluded the Buyers were not entitled to relief on their remaining claims for money had and received and restitution. Accordingly, it entered judgment in favor of the Sellers.

On appeal, the Buyers contend the trial court committed reversible error by: (1) excluding the testimony of Justin Shrenger, their proffered expert on Chinese real estate law; and (2) denying the Buyers' request to read into the record excerpts of the deposition testimony of the Sellers' proffered expert on Chinese real estate law, Natalie Zhang, whom the Buyers successfully moved to exclude from testifying at trial. As discussed below, we reject the Buyers' arguments and affirm.

---

[1] Because several individuals involved in this case share the same surname, we refer to them by their first names to avoid confusion. No disrespect is intended. Siu Ying died before the lawsuit was initiated. Chau Han died after her deposition was taken but before trial began. Consequently, at trial and on appeal, Chau Han has been represented by Henry Fan, her son and the special administrator of her estate, as well as Siu Ying's estate.

## BACKGROUND

**I.    Relevant Factual Background**[2]

The transaction at issue related to a four-story building located in Guangzhou, China, known as the Beijing Road Property. At the time of the transaction, the Sellers owned the property and possessed the real estate certificate reflecting their ownership. They were octogenarians living in Monterey Park, California.

Lam, a Hong Kong resident, has been in the real estate investment business for the last 30 years and has been involved in over 50 transactions relating to real estate in China. He solicits elderly individuals residing in the United States to "sell" him properties they own in China. For these transactions, Lam has utilized a power of attorney with terms that, under Chinese law, permit him to resell the property to third parties without ever having to take title in his own name or pay taxes on the resale transaction.

According to Chau Han, between March and May 2015, Lam called the Sellers and offered to send them $2 million in exchange for a power of attorney and the property certificate for the Beijing Road Property. In July 2015, Lam wired $300,000 to the Sellers. Then, on August 7, 2015, Lam e-mailed a power of

---

2      We limit our discussion of the facts to those necessary to provide context for understanding and resolving the issues presented on appeal. The following facts are taken from the trial court's statement of decision, as well as the portions of the Reporter's Transcript cited in the parties' briefs. The parties do not challenge or otherwise dispute these facts on appeal. The Sellers' motion to augment the Clerk's Transcript, filed September 1, 2022, is hereby denied.

attorney to the Sellers, which was prepared by his attorneys. Per Lam's direction, the Sellers signed the power of attorney before a notary public on August 11, 2015, and brought it to the Chinese Consul's Office in Los Angeles for certification. Lam wired the Sellers an additional $1.7 million on August 20, 2015. Four days later, he met the Sellers at their home in Monterey Park and picked up the executed power of attorney along with the property certificate.

The power of attorney granted 14 separate powers to Tsang and two of Lam's lawyers as attorneys-in-fact. The seventh power is the power to sell the Beijing Road Property and keep the proceeds of the sale. With respect to this power, the power of attorney authorizes the attorneys-in-fact "[t]o sell the [Beijing Road Property], enter into [a] sales contract on the [Beijing Road Property], handle formalities at the real estate transaction office for the transfer of property possession (including record-search and checking and survey), [and] to collect the proceeds from the sale of the property," and if "the transaction is not successful, the attorneys-in-fact are authorized to handle the formalities for the termination of the transaction." (Italics omitted.)

After obtaining the power of attorney and property certificate from the Sellers, Lam encountered several difficulties relating to the property. In the fall of 2015, Lam discovered Siu Ying's sister, Pui Wah Fan, had been residing in the Beijing Road Property and had prevented his agents from entering the premises to prepare a site survey, a necessary document for effectuating title transfers in China. In 2005, the Sellers had granted a limited power of attorney to Pui Wah.[3] Then, in June

_____

3      In its written statement of decision, the trial court credited Chau Han's testimony that, while discussing the possibility of

4

2016, Lam learned that, without requisite authority, Pui Wah purportedly sold the Beijing Road Property to a third-party developer three weeks after he had received the documents relating to the property from the Sellers. Due to these incidents, the property has been the subject of ongoing litigation in China.

## II.    Procedural Background

The Buyers' operative second amended complaint asserted 10 causes of action against the Sellers. At trial, only three causes of action remained: (1) promissory fraud; (2) money had and received; and (3) restitution.

Before trial, the Buyers filed a motion in limine seeking to exclude the testimony of Natalie Zhang, one of the Sellers' proffered experts on Chinese real estate law. Later, the Sellers filed an ex parte application[4] seeking to exclude the testimony of

---

purchasing the power of attorney and property certificate with her, Lam was made aware of the limited power of attorney previously granted to Pui Wah but was not concerned by it. Specifically, Chau Han testified she expressly told Lam that Pui Wah was previously given a power of attorney. In response, Lam told her "[it] doesn't matter that [Pui Wah] had the power of attorney," and assured her that he and his team "would take care of [the matter]."

4       The Sellers represented they sought ex parte relief because "the totality of Justin Shrenger's qualifications and opinions were not known until his expert deposition was taken on November 3, 2020." Consequently, by the time the transcript of Shrenger's deposition had been prepared and reviewed by the Sellers and/or their counsel, they had insufficient time to file a motion in limine to be heard before the final status conference set for November 20, 2020. Nor did they have sufficient time to file any other

Justin Shrenger, the Buyers' sole proffered expert on Chinese real estate law, based on —among other grounds—his lack of qualifications. At the final pretrial status conference, the trial court granted the Buyers' motion to exclude Zhang in part and denied the Sellers' application to exclude Shrenger.

During the eight-day bench trial, the trial court heard testimony from several lay witnesses, including Lam and Chau Han. It also heard testimony from the parties' experts on Chinese real estate practice and law. The Sellers presented the testimony of Junwei Gong, while the Buyers called Shrenger to testify.[5] Shrenger and Gong provided conflicting opinions on whether, under Chinese law, the purchase of a power of attorney along with the original property certificate is a common and/or valid practice used by real estate investors to facilitate and profit from transfers of real property in China.

---

noticed motion to be heard before the commencement of trial on December 7, 2020.

5       Gong's deposition testimony was received as his trial testimony under Code of Civil Procedure section 2025.620, subdivision (d), which permits any party to "use a video recording of the deposition testimony of . . . any expert witness even though the deponent is available to testify" under certain conditions, the satisfaction of which are not in dispute here. In addition, although not entirely clear, the record indicates Chau Han's deposition testimony was received as her trial testimony pursuant Code of Civil Procedure section 2025.620, subdivision (c)(2)(C), which permits any party to "use for any purpose the deposition of any person" if the court finds the deponent is dead. Per the parties' stipulation, the trial court read the transcripts of these witnesses' depositions over a weekend during the trial in lieu of having their depositions read into the record.

After receiving evidence and argument, the trial court issued an oral ruling in favor of the Sellers. Ultimately, the court concluded: (1) based on Gong's testimony, under Chinese law, the real estate transaction at issue was completed when the Sellers delivered to Lam "a signed and legalized power of attorney and . . . a real estate certificate for the property involved in the transaction"; (2) the Buyers failed to prove by a preponderance of the evidence that the real estate transaction had yet to be completed at the time Lam received those documents from the Sellers; and (3) the Buyers failed to prove any false promise by the Sellers as required to prevail on a claim for promissory fraud.

On January 25, 2021, per the Buyers' request, the trial court issued a written statement of decision explaining, over the course of 11 pages, its findings and conclusions in the Sellers' favor. That same day, the court entered judgment for the Sellers on all causes of action asserted against them. The Buyers timely appealed.

## DISCUSSION

As noted above, the Buyers contend the judgment must be reversed because the trial court erred by excluding: (1) the testimony of Shrenger; and (2) excerpts of Zhang's deposition transcript. We review these evidentiary rulings for abuse of discretion. (*Avivi v.Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467 ["A court's decision to exclude expert testimony is reviewed for abuse of discretion"]; *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 885 ["We review a trial court's decision to admit or exclude evidence under the abuse of discretion standard"].)

7

# I. Appellants have not shown reversal is required based on the trial court's rulings relating to Shrenger's testimony.

## A. General Legal Principles

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).)

"The party offering the expert must demonstrate the expert's knowledge of the subject is sufficient; a determination left to the sound discretion of the trial judge. [Citation.] The determinative issue in each case must be whether the witness has sufficient skill or expertise in the field so his testimony would be likely to assist the [finder of fact] in the search for the truth." (*Jeffer, Mangels & Butler v. Glickman* (1991) 234 Cal.App.3d 1432, 1442 (*Jeffer*).) If the witness passes this "threshold test of general testimonial qualifications," then "the question of the degree of the witness's knowledge goes to the weight of the testimony rather than to its admissibility." (*Id.* at p. 1443.) In other words, "'[w]hen a preliminary showing is made that the proposed witness has sufficient knowledge to qualify as an expert under the Evidence Code, questions about the depth or scope of his or her knowledge or experience go to the weight, not the admissibility, of the witness's testimony.'" (*People v. Jackson* (2016) 1 Cal.5th 269, 327-328 (*Jackson*).)

## B. Analysis

The Buyers contend the trial court erroneously excluded Shrenger's testimony based on his lack of qualifications to testify as an expert on Chinese real estate practice and law. We reject this argument because, as discussed below, the record does not

8

show the trial court excluded Shrenger's testimony based on his failure to satisfy "the threshold test of general testimonial qualifications" (*Jeffer*, *supra*, 234 Cal.App.3d at p. 1443), as the Buyers contend. Instead, the court determined Shrenger "'ha[d] sufficient knowledge to qualify as an expert under the Evidence Code,'" and received his testimony at trial, but accorded it no weight based on "questions about the depth [and] scope of his . . . knowledge [and] experience . . . .'" (*Jackson*, *supra,* 1 Cal.5th at p. 328.)

Throughout the underlying proceedings, the trial court rejected the Sellers' efforts to preclude Shrenger from testifying as an expert at trial. As noted above, before trial, it denied the Sellers' ex parte application to exclude Shrenger's testimony due to his lack of qualifications. At trial, the court heard extensive testimony from Shrenger on direct examination. Then, during cross-examination, the trial court denied the Sellers' oral motion to disqualify Shrenger as an expert and heard additional testimony from him. Finally, after hearing further testimony on redirect examination, the trial court questioned Shrenger directly, asking him questions on several topics, including his education in China.

When issuing its oral decision, the trial court made the following remarks regarding the parties' presentation of conflicting expert testimony on real estate transactions and the applicable law in China: "The parties entered into a transaction involving the real estate law of China. Neither party has acted dishonestly. Both parties are innocent of any deliberate wrongdoing. The transaction consisted of the documents that the [Sellers] . . . provided to . . . Lam on August 24, 2015, with respect to real property in Guangzhou, China.

"The legal significance of the documents, under the laws and procedures of China, must be based upon the opinion of experts in Chinese law and practices involving real estate transactions. Each side provided an expert. Plaintiff[s] provided Justin Shrenger, and defendant[s] provided Junwei Gong.

"*Mr. Shrenger has the minimum qualifications to provide opinions about Chinese law. However, he has not actually advised clients about Chinese law. He's not a licensed attorney in China, and he's never formally studied Chinese law. I decline to follow Mr. Shrenger's opinions either expressed at trial or in his declaration filed earlier.*

"Mr. Gong has the credentials that the court would expect and respect as to the application of Chinese laws and practices to a real property transaction occurring in Guangzhou, China. He's been a licensed attorney [in China] for 12 years. Of course, he's native born Chinese from that locality. He's handled numerous real property transactions. He's been an advisor to the municipal government, and he's also taught in . . . two universities of Chinese law.

"I don't think I need anything more. The court relies upon the expert opinion of Mr. Gong, that under China law the transaction was completed when the [Sellers] delivered to . . . Lam a signed and legalized power of attorney and delivered to him a real estate certificate for the property involved in the transaction. I think this is an expert opinion case based upon the documents and laws and practices of that area of China." (Italics added.)

The trial court again addressed the conflicting expert testimony presented at trial in its statement of decision. With respect to Gong, the court stated: "The [Sellers] at trial

10

offered . . . the expert opinion of Junwei Gong. Mr. Gong, a Chinese citizen, is a lawyer licensed to practice in China and, in his profession, specializes in advising clients about real property transactions in Guangdong Province, China." It later stated: "Mr. Gong's expert opinions in applying Chinese law and practice to the Beijing Road Property transaction are accepted by the Court." (Fn. omitted.)

With respect to Shrenger, the trial court noted: "Mr. Justin Shre[n]ger, plaintiffs' expert, is not qualified to provide expert opinion on real estate law or practice in Guangzhou, China. An American, he is not licensed to practice law in China; has not handled real estate transactions under Chinese law; and has never been qualified by a Chinese Court to testify about Chinese law. (He has testified in Chinese courts about American law.) The parties stipulated that Shre[n]ger's declaration should be received into evidence [citation], and he also testified in person, but the Court does not find Mr. Shre[n]ger qualified to offer expert opinion on Chinese law. *The Court puts no reliance on his opinions regarding Chinese law regarding the documentation of real estate transactions occurring in China.*" (Italics added.) In making these remarks, the trial court did not strike Shrenger's testimony.

Taken together, the portions of the record discussed above show the trial court did not—as the Buyers contend—exclude Shrenger's testimony based on his lack of qualifications.[6] Instead,

---

6      For this reason, the cases on which the Buyers rely are distinguishable from this case. (See *Avivi v. Centro Medico Urgente Medical Center, supra,* 159 Cal.App.4th at pp. 465-466 [reversing entry of summary judgment in medical malpractice case based on the trial court's erroneous exclusion of the

the court expressly found Shrenger satisfied "the threshold test of general testimonial qualifications" and "permitted [him] to testify." (*Jeffer*, *supra*, 234 Cal.App.3d at p. 1443.) Subsequently, after receiving his testimony, the trial court appropriately considered his qualifications and experience to evaluate "the degree of [his] knowledge" and determine "the weight [to give] to [his] testimony." (*Ibid.*) Ultimately, the court gave no weight to Shrenger's testimony based on its concerns regarding "the depth [and] scope of his . . . knowledge [and] experience" with Chinese real estate practice and law. (*Jackson*, *supra*, 1 Cal.5th at p. 328.) "Venerable precedent holds that, in a bench trial, the trial court is the 'sole judge' of witness credibility." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582) And, "[i]t is not the role of this court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions." (*People v. Poe* (1999) 74 Cal.App.4th 826, 831.) Accordingly, we conclude the Buyers have not shown reversal is required based on the trial court's rulings relating to Shrenger's testimony.[7]

---

declaration by appellants' sole expert on the applicable standard of care]; *Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 307 [same]; *Jeffer, supra*, 234 Cal.App.3d at pp. 1435, 1437, 1443-1445 [holding trial court erred by precluding appellant's expert from testifying at trial].) Consequently, the analyses and holdings from those cases do not assist the Buyers in showing reversible error.

7      At oral argument, the Buyers argued for the first time that, in evaluating whether the trial court excluded Shrenger's testimony, we should disregard its prior rulings and the comments in its oral decision showing it found Shrenger satisfied "the threshold test of general testimonial qualifications." (*Jeffer*, *supra*, 234 Cal.App.3d at p. 1443.) Instead, they asserted we must read footnote 3 of the statement of decision in isolation, and

**II.  Appellants have not shown reversal is required based on the trial court's exclusion of Zhang's deposition testimony at trial.**

Next, the Buyers contend the judgment must be reversed because the trial court erred by denying their request to read portions of Zhang's deposition testimony into the record at trial. Again, as discussed below, we reject their argument.

Generally, a judgment may not be reversed "by reason of the erroneous exclusion of evidence unless . . . it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means[.]" (Evid. Code, § 354, subd. (a).) An offer of proof "'must set forth the actual evidence to be produced and not merely the facts or issues to be addressed and argued.'" (*Bowman v. Wyatt* (2010) 186

---

construe it as a retroactive order excluding Shrenger's testimony based on his lack of qualifications. We need not address this contention, as it was not raised in the Buyers' appellate brief. (*Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1027 fn. 2.) In any event, the argument is unpersuasive. As noted above, in the footnote at issue, the trial court did not strike Shrenger's testimony. Instead, the court expressly acknowledged that, through his declaration and in-person testimony, Shrenger's opinions had been received into evidence. It then stated it "puts no reliance on his opinions" due to Shrenger's lack of qualifications and experience with Chinese real estate law and practice. In context (and even if viewed in isolation), these comments demonstrate the trial court correctly considered "the degree of the witness's knowledge" in evaluating "the weight of the testimony rather than . . . its admissibility." (*Jeffer*, at p. 1443.)

Cal.App.4th 286, 329; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1176, abrogated on another ground as explained in *People v. Leon* (2020) 8 Cal.5th 831, 848 ["An offer of proof must consist of material that is admissible, and it must be specific in indicating the name of the witness and the purpose and content of the testimony to be elicited"].)

During the Buyers' presentation of rebuttal evidence at trial, their counsel asked to read excerpts of Zhang's deposition testimony into the record. At that point, the trial court questioned whether, on rebuttal, counsel could introduce the deposition testimony of an expert witness who has been excluded. Subsequently, the parties and the trial court engaged in a lengthy dialogue regarding whether the excerpts of Zhang's deposition testimony could be read into the record. During this exchange, the Buyers' counsel identified the purpose for which he sought to use the excerpts, i.e., to contradict the opinions expressed by Gong in support of the Sellers' case. However, at no point before or after the court's denial of his request did counsel describe the substance of the deposition excerpts he sought to introduce. Nor did counsel explain how those excerpts would contradict the opinions expressed by Gong.

Accordingly, the record demonstrates the Buyers did not "'address the "substance, purpose, and relevance of the excluded evidence" (Evid. Code, § 354, subd. (a)),'" as they did not "'set forth the actual evidence to be produced.'" (*Bowman v. Wyatt*, *supra*, 186 Cal.App.4th at p. 329.) Instead, the Buyers only discussed the "'issues to be addressed and argued'" based on the disputed evidence. (*Ibid*.) The Buyers therefore did not make an adequate offer of proof regarding the excerpts of Zhang's deposition testimony they sought to introduce at trial. (See *People*

14

*v. Rodrigues, supra*, 8 Cal.4th at p. 1176 [offer of proof must specify "the purpose *and* content" of the evidence to be introduced (italics added)].) On this record, we cannot determine whether the trial court's exclusion of Zhang's deposition testimony was prejudicial, and conclude the Buyers failed to establish the judgment must be reversed based on the asserted error. (See Evid. Code, § 354, subd. (a); see also *Gutierrez v. Cassiar Mining Corp.* (1998) 64 Cal.App.4th 148, 161 ["One function of an offer at trial is to provide a reviewing court with the means of assessing prejudice from any error [citation], thus enabling a party challenging the judgment to meet its burden of affirmatively showing *reversible* error by an adequate record" (original italics)].)[8]

---

8        We acknowledge that, in asserting reversal is required based on the exclusion of Zhang's deposition testimony, the Buyers rely heavily on: (1) the transcript of the final pretrial status conference held on December 3, 2020; and (2) the transcript of Zhang's deposition. These documents, however, were not included in the Clerk's Transcript. Instead, they were attached to the Buyers' July 27, 2022 motion to augment the record on appeal, which this court denied on August 17, 2022. Because these documents are not part of the appellate record, we decline to consider them or the Buyers' arguments based thereon. (See *Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364 ["When practicing appellate law, there are at least three immutable rules: first, take great care to prepare a complete record; second, if it is not in the record, it did not happen; and third, when in doubt, refer back to rules one and two"].)

## DISPOSITION

The judgment is affirmed. Respondent is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, P. J.

We concur:


COLLINS, J.


MORI, J.

16